Pamela E. SOUSLEY, Movant,

v.

Curtis B. SOUSLEY, Respondent.

Supreme Court of Kentucky.

May 5, 1981.

As Modified May 27, 1981.

John W. Morgan and O. Reed Rhorer, Lexington, for movant.

James R. Odell, Lexington, for respondent.

## OPINION OF THE COURT

The issue to be decided on this appeal is whether the income from the sale of a nonmarital asset is marital property within the meaning of KRS 403.190.

The parties began living together in 1970. They continued this relationship in Florida and Kentucky, intermittently, until their marriage in Florida on October 28, 1974. Immediately after the marriage, the parties returned to Lexington, Kentucky. Respondent, Dr. Sousley, had been a successful veterinarian in central Kentucky for some years. He sold his practice in 1972 and began to earn a living by buying and selling real estate, building houses for sale, and by investing in other businesses in Kentucky and Florida.

Several months prior to returning to Kentucky, Dr. Sousley activated plans to operate a retail clothing store in Lexington, specializing in the sale of blue jeans. The new business, known as the "Missing Link" was opened for business in March of 1975, several months after the marriage. The vehicle used for the operation of the business was a corporation previously used by Dr. Sousley in his real estate business. He changed its name to "The Missing Link, Inc.," and, prior to his marriage, added $30,000 in capital to the assets of the corporation. Both parties participated in the operation of the store and were paid modest salaries. In June of 1977, Dr. Sousley sold the capital stock of the corporation for the sum of $120,000.

At the trial of the marriage dissolution, Mrs. Sousley claimed the increase in value of the nonmarital property of Dr. Sousley was attributable to the joint efforts of the parties and was, therefore, marital property under the provisions of KRS 403.190(2). The trial court found, as a matter of fact, that there was *no evidence* to show that the increase in value was attributable to a so-called "team effort" of the parties. He ruled that inflation was the sole cause of the increase and denied any portion of the "increased value" of the nonmarital property to Mrs. Sousley. The Court of Appeals affirmed solely on the basis that the evidence sustained the findings of the trial court.

Because the Court of Appeals did not decide a critical legal issue, we granted discretionary review.

While we may not agree with the trial court's conclusion that Mrs. Sousley made no contribution to the increase in value of the stock, we agree that there is sufficient evidence so that his findings are not clearly erroneous. CR 52.01. *Yates v. Wilson*, Ky., 339 S.W.2d 458 (1960).

However, as we view the case, the sale of the nonmarital capital stock was not a so-called "increase in value," thus making the provisions of KRS 403.190(2)(e) inapplicable. To begin with, the stock of the corporation, including the $30,000 cash infusion, was solely the property of Dr. Sousley prior to marriage and was, therefore, nonmarital. KRS 403.190(1). Although the evidence is conflicting, it is clear that both Dr. and Mrs. Sousley worked hard to prepare the store for opening. Moreover, both were employed to some degree in the successful operation of the business which continued until June of 1977, when Dr. Sousley sold the capital stock. The creation, operation and subsequent sale of this business was typical of Dr. Sousley's livelihood. He was, from 1972 on, a modestly successful "entrepreneur." The profit derived from the sale of the Missing Link was, in fact, typical of Dr. Sousley's "stock-in-trade." This was the way he earned a living.

We conclude that the profit made, if any, on the sale of the Missing Link was income to Dr. Sousley. It was not simply an increase in value of his nonmarital property. Although we have not previously spoken on this matter, we believe that logic dictates that this income, although made possible by the initial use of nonmarital property, was, under our statute, marital property.

KRS 403.190 sets out the guidelines for the disposition of property in a marriage dissolution action. This particular provision is based upon a section of the Uniform Marriage and Divorce Act. The authors of that model act provide a strong indication of its meaning:

> "*The phrase, 'increase in value' used in subsection (b)(5) is not intended to cover the income from property acquired prior to marriage. Such income is marital property.* Similarly, income from non-marital property acquired after the marriage is marital property." (emphasis added)

Commissioner's note to Section 307 of the Uniform Marriage and Divorce Act.

The Kentucky Court of Appeals, in a recent well-reasoned opinion, adopted this interpretation. *Brunson v. Brunson*, Ky. App., 569 S.W.2d 173 (1978). The distinction between increase in value and income from marital property is supported by Professor Petrilli. See, Kentucky Family Law, Petrilli, Sec. 24.6(e), 1980 Supp.

■ We therefore hold that income produced from nonmarital property is, in fact, marital property for purposes of disposition of property pursuant to the directives of KRS 403.190.

■ However, considering the contents of the record in this case, we are unable to give Mrs. Sousley whatever benefit might accrue to her as the result of our decision. Under our theory, the net income from the sale of the capital stock would be marital property. Our examination of the record reveals a failure to show the actual *profit* realized by Dr. Sousley from the sale. The record reveals that he invested $30,000, in money, in his corporation which subsequently owned and operated the Missing Link. The record does not show however, the net worth of the corporation at any time—prior to its name change, before the additional capitalization or, for that matter, at any time before the sale. Even though it seems unlikely, it is conceivable, depending upon accounting techniques and other circumstances, that *no* profit was realized. We rule, reluctantly, that the evidence before us is not sufficient to show the existence of any income to Dr. Sousley as the result of the sale of the nonmarital property in question. We therefore must affirm the Court of Appeals and the trial court.

One other matter should be disposed of. Prior to the marriage, an antenuptial agreement which provided for the payment of money upon a divorce being granted was prepared by a Florida attorney, at the behest of Dr. Sousley, and signed by both parties. The trial court ruled that such agreements are invalid in Kentucky. This ruling was upheld by the Court of Appeals, relying on the case of *Stratton v. Wilson*, 170 Ky. 61, 185 S.W. 522 (1916). The correctness of that decision was raised before us by appellee. Some of the members of this court, while not wholly supportive of the policy set out in *Stratton*, supra, are unwilling in this particular case to reconsider the policy and to overrule such a long-standing precedent.

The decision of the Court of Appeals is affirmed on the appeal.

All concur.