Bonita M. DOTSON (Now Bale), Appellant,

v.

David S. DOTSON, Appellee.

No. 92–SC–1058–DG.

Supreme Court of Kentucky.

Oct. 28, 1993.

Jon Goodman, Mike Nichols, Goodman & Nichols, Munfordville, for appellant.

Deborah Tomes Wilkins, Campbell, Kerrick & Grise, Bowling Green, for respondent.

SPAIN, Justice.

By Findings of Fact, Conclusions of Law, and Judgment entered on October 22, 1991, the Hart Circuit Court adjudicated all issues concerning restoration of nonmarital property, division and assignment of marital property, and payment of maintenance between the parties. A decree of dissolution had been entered previously on February 5, 1991, reserving such disposition.

The respondent-husband, David, appealed the property division and denial of maintenance for him to the Court of Appeals, which reversed and remanded in a split decision. We granted discretionary review and now affirm the Court of Appeals.

The parties married in August of 1975, at which time the wife, Bonita, was forty-five years old and the husband, David, was almost twenty-four years old. No children were born of the marriage. When they married, Bonita was a very successful businesswoman who owned two Convenient Food Mart stores, a large home in Louisville, and extensive personalty, including furniture and antiques. Her net worth was estimated at $452,679.00. David's nonmarital property consisted of a Louisville home in which he had an equity of $4,000, a 1970 Plymouth car, a 1975 motorcycle, various guns, tools, and two quilts.

During the fifteen-year marriage, the parties sold both Louisville homes and, in 1985, bought a marital residence in Hart County where Bonita continued to live after the divorce. They also sold the stores in 1982 and 1988 and bought additional farms and a tract of commercial real estate where they operated first a restaurant and later an antique shop. At separation there also were various certificates of deposit, promissory notes, an IRA account, vehicles, furniture, firearms, tools, and miscellaneous personalty.

The trial judge painstakingly itemized the various properties of the parties, separating the nonmarital properties from those acquired during the marriage, tracing assets wherever possible, and identifying their proven values. His efforts were commendable, particularly with reference to nonmarital assets, since it appears that neither party has taken exception to his distribution thereof. Set aside to Bonita were a C.D. and a promissory note having a combined value of $125,-000, representing the selling price of her premarital residence in Louisville. She also was restored to her separate furniture and an automobile.

David was allowed $4,000 cash representing his equity in his premarital residence and was assigned firearms, tools, quilts, and a pickup truck.

The trial court's assignment of marital property, unfortunately, was not so agreeable to David. The court found a total value of $198,926 for all marital property, which he divided 85% to Bonita and 15% to David. David's allotment of $29,838 consisted of $17,838 in cash and a motorcycle worth $12,000. All remaining assets, valued at $169,088, and including all income-producing property, were set apart to Bonita.

David's plea for maintenance was also denied by the trial court on the ground that he failed to demonstrate that he was unable to support himself through appropriate employment. The evidence reflected that at the time of the marriage David was in his sixth year of employment at General Electric, having worked on an assembly line, in the paint unit, and finally, as a janitor. He continued this work until he quit in 1977, earning approximately $8,000 per year. He had only an eighth-grade education.

In reversing the trial court's division of marital property, the Court of Appeals found an abuse of discretion, principally as the result of a "disproportionate emphasis on factor (a)" of the guidelines set out in KRS 403.190(1), viz.:

It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:

(a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;

(b) Value of the property set apart to each spouse;

(c) Duration of the marriage; and

(d) Economic circumstances of each spouse when the division of property is to become effective....

Both before the Court of Appeals and here, David concedes that the above-quoted statute does not require an equal division of marital property, but insists that the disparity in the division ordered by the trial court here fails the test of a division in "just proportions." In support of his assertion, he points to the evidence that both he and Bonita were unemployed by choice during most of the marriage and simply lived on and accumulated a marital estate from the unearned income from Bonita's premarital investments. Such income is clearly "marital property." *Sousley v. Sousley*, Ky., 614 S.W.2d 942 (1981); *Brunson v. Brunson*, Ky.App., 569 S.W.2d 173 (1978).

We agree that under such circumstances the question of respective contributions by the spouses is simply inapplicable. Bonita's reliance on *Sharp v. Sharp*, Ky., 491 S.W.2d 639 (1973), is misplaced, since that case dealt with the issue of how to treat an increase or appreciation in the value of non-marital property occurring during a marriage. Here, the trial court abused its discretion in awarding Bonita 85% of the marital estate merely because it accumulated primarily from her non-marital property. We agree that upon remand the trial court should make a reapportionment of marital property, giving the factor of "contribution of each spouse to acquisition of the marital property" only such weight as is fairly reflected by the evidence in this specific case, while also giving appropriate weight to the other statutory factors.

We also agree with the Court of Appeals that, with regard to the question of maintenance, the record clearly reflects that David is now "a middle-aged man with a very limited work history, an eighth-grade education, and few, if any, marketable skills." Further, it is undisputed that David has not competed in the marketplace for wages for some eighteen years, and the court can certainly take judicial notice of our area's present high unemployment rate and economic recession. Additionally, the maintenance provisions of the dissolution statute are designed to provide income to a spouse commensurate with his or her needs at a standard of living comparable to that enjoyed during the marriage. It must first, of course, be established that such spouse lacks sufficient property to provide for his or her reasonable needs and is unable to support himself or herself through appropriate em-

ployment. Finally, the court certainly must also consider the ability of the spouse from whom maintenance is sought to meet his or her own needs while at the same time meeting the needs of the spouse seeking maintenance.

Upon remand, the question of maintenance for David will only need to be readdressed, if, after reapportionment of the marital estate, it then still appears that he lacks sufficient property, including such additional marital property apportioned to him, to provide for his reasonable needs.

This cause is remanded to the Hart Circuit Court for further proceedings and the entry of an amended or substituted judgment consistent with this Opinion.

STEPHENS, C.J., and COMBS, LAMBERT and LEIBSON, JJ., concur.

REYNOLDS and WINTERSHEIMER, JJ., dissent, asserting that the majority substitutes its discretion for that of the trial judge.