James Lee HOLMAN, Appellant,

v.

Sue Rodes HOLMAN, Appellee.

No. 1999–SC–0525–DG.

Supreme Court of Kentucky.

June 13, 2002.

Rehearing Denied Oct. 17, 2002.

Catesby Woodford, Miller, Griffin and Marks, Lexington, Kentucky, Michael J. Cox, Miller, Griffin and Marks, Lexington, Kentucky, Susan Y.W. Chun, Miller, Griffin and Marks, Lexington, Kentucky, for appellant.

Martha A. Rosenberg, Lexington, Kentucky, for appellee.

KELLER, Justice.

## I. ISSUE

This appeal presents an issue of first impression in Kentucky. After thirteen (13) years of service as a firefighter, but before his pension vested, Appellant be-

came totally and permanently occupationally disabled. Appellant retired and began receiving monthly disability retirement benefits. When his marriage to the Appellee was dissolved several years later, the trial court classified Appellant's future entitlement to disability retirement benefits as marital property and awarded Appellee a portion of those benefits. Were Appellant's disability retirement benefits properly classified as marital property? We hold that disability retirement benefits are properly classified as marital or nonmarital property according to the character of the property they replace. Accordingly, Appellant's future, post-dissolution disability retirement benefits, which replace his future nonmarital earnings as a firefighter, constitute Appellant's separate nonmarital property.

## II. BACKGROUND

The material facts regarding Appellant's pension were stipulated to by the parties and are therefore undisputed. In 1974, the Appellant went to work as a firefighter with the Lexington–Fayette Urban County Government (LFUCG). The parties married seven (7) years later in 1981. Six (6) years later, in 1987, Appellant retired from his firefighter position due to total and permanent occupational disability [1] and began receiving monthly benefit payments that will continue throughout his lifetime so long as his disability continues.[2] The parties' marriage was dissolved in 1997.

At the time of his marriage, Appellant had contributed $6,859.00 towards his pension with LFUCG, and he contributed an additional $11,206.40 during his marriage for a total contribution of $18,065.40. At the time of his retirement, his pension had not vested [3] because he had not "completed at least twenty (20) years of total service."[4] Accordingly, if Appellant had terminated his employment with LFUCG in 1987 without being found occupationally

1. KRS 67A.360(16) (" 'Total disability' shall mean a disability which substantially precludes a person from performing with reasonable regularity the substantial and material parts of any gainful work or occupation *in the service of the department* that he would be competent to perform were it not for the fact that the impairment is founded upon conditions which render it reasonably certain that it will continue indefinitely[.]" (emphasis added)).

2. KRS 67A.462(1) ("Any member whose medical examination reveals that he is no longer totally and permanently disabled within the meaning of KRS 67A.360(16) shall be disqualified from further receipt of disability benefits.").

3. *See* Grace Ganz Blumberg, "Marital Property Treatment of Pensions, Disability Pay, Workers' Compensation, and Other Wage Substitutes: An Insurance, or Replacement," 33 UCLA L.Rev. 1250, 1259 (1986) (hereinafter "Blumberg") ("A pension vests when an employee completes the period of employment required to secure an indefeasible entitlement to a pension payable upon retirement.

Once the pension vests, the employee may leave his job for any reason and still receive benefits when he eventually retires.") Until the employee fulfills the time period requirement, the pension is classified as "nonvested." *Id.* at 1260; L. Graham & J. Keller, 15 Kentucky Practice, Domestic Relations Law (2nd ed.) § 15.21 at 527 (West 2000) (hereinafter "Graham & Keller") ("[P]ension benefits are vested when the plan participant has a right to receive the benefits on termination for any cause, with only the amount to be fixed."). Although a pension is vested, until the employee satisfied all of the conditions for receipt of benefits, the pension is classified as vested but immature. Blumberg, *supra*, at 1259–60. However, "[o]nce [the employee] satisfies these conditions, [the employee's] pension matures: [the employee] has an immediate right to the benefits." Blumberg, *supra*, at 1260; Graham & Keller, *supra* at 527 ("If a plan participant has a current right to the benefits, they are known as 'mature' benefits.").

4. KRS 67A.410(2)

disabled, he would have been entitled to receive only his $18,065.40 contribution.[5]

The parties disagreed as to whether Appellant's future entitlement to retirement disability benefits from LFUCG constituted marital property. The trial court recognized the issue as one of first impression and characterized Appellant's retirement disability payments as marital property subject to equitable division because Appellant was able to work in another capacity despite his disability:

> It appears to the Court that a determination must be made whether or not this disability retirement fund should be viewed differently than other retirement funds. This Court also believes that a determination must be made on a case-by-case basis.
>
> . . .
>
> Case law indicates that disability payments are different in that it is compensation for the inability to earn wages from that occupation in the future. In many cases, this may be true in that the party receiving the disability payments may not be able to work in his chosen field and often can not work in any field in which he could earn approximately the same income. The case under submission is distinguished in that [Appellant] has been able to earn a living by owning and operating his own business.
>
> This Court holds that the retirement account is marital property, subject to division and distribution by the Court, even though it is based on a disability.

It was serving as income since the retirement and can not be viewed only as compensation for the [Appellant] not being able to work or as payment for pain and suffering due to an occupational disability.

> Therefore, the [Appellee] is entitled to one-half of the marital contribution, which is 31% of the monthly payments.

On appeal, the Court of Appeals held that "[a]bsent a specific statutory exemption, disability payments must be deemed marital" and affirmed the trial court. We disagree and reverse.

### III. STANDARD OF REVIEW

■ Appellee argues that this Court may review the trial court's determination that Appellant's disability benefits were marital property only for clear error. We disagree. Whether a disability retirement is classified as marital or nonmarital property involves an application of the statutory framework for equitable distribution of property upon divorce and therefore constitutes a question of law subject to this Court's independent determination.[6]

### IV. CLASSIFICATION OF DISABILITY BENEFITS

While the classification of disability pension benefits is an issue of first impression for Kentucky appellate courts, other jurisdictions have resolved similar issues using widely different approaches. The Tennessee Supreme Court recently outlined the various approaches that courts have uti-

---

5. KRS 67A.500(1) ("Upon withdrawal from service prior to retirement, a member shall be entitled to receive a refund of the amount of contributions made by the member . . . without interest.").

6. *See Hardin County Schools v. Foster and News–Enterprise,* Ky., 40 S.W.3d 865 (2001) (opining that questions of statutory interpretation are questions of law and that the stan-

dard of review involves examining plain meaning and legislative intent); *Uninsured Employers' Fund v. Garland,* Ky., 805 S.W.2d 116 (1991) (holding that on questions of law a reviewing court has greater liberty to discern whether conclusions were supported by evidence); 5 Am.Jur.2d, *Appellate Review* §§ 684, 698 (1995).

lized in determining the character of disability payments:

> Like Tennessee, no other state has a statute that either specifically designates disability benefits as marital property or specifically excludes such benefits from the definition of marital property. Although this lack of explicit statutory guidance has produced a substantial body of case law on the subject, given the differing purposes of disability benefits, courts are split on the proper classification.

Those courts which hold that disability benefits constitute marital property have advanced several rationales for this conclusion. Under one approach, which has been referred to as the "mechanistic approach," courts consider whether disability benefits have been specifically excepted from the definition of marital property by statute. Disability benefits will be considered marital property unless there is a statutory provision specifically excluding disability benefits from the marital estate.

Another rationale given in support of the mechanistic approach is that disability benefits should be considered marital property because the policy premiums were paid with marital funds or the marital estate acquired the benefits as a form of compensation for spousal labor during the marriage, much like a pension.

However, the majority of courts considering the proper classification of disability benefits have adopted the analytical approach which focuses on the nature and purpose of the specific disability benefits at issue. Under this approach, benefits which actually compensate for disability are not classified as marital property because such benefits are personal to the spouse who receives them and compensate for loss of good health and replace lost earning capacity. However, where the facts warrant, courts utilizing the analytical approach will separate the benefits into a retirement component and a true disability component, with the retirement component being classified as marital property and the disability component being classified as separate property. This approach has been applied both to disability benefits paid in connection with insurance coverage maintained by the disabled spouse's employer and to disability benefits paid in connection with a private policy of disability insurance acquired with marital funds during the marriage.[7]

In addition to the approaches noted by the Tennessee Supreme Court is an approach recommended by the American Law Institute which, similar to the "analytical approach" or "purpose analysis,"[8] classifies such benefits according to the nature of the property they replace rather than by the source of the funds used to acquire the benefit: "Disability pay and workers' compensation benefits are marital property to the extent they replace income or benefits the recipient would have earned during the marriage but for the qualifying disability or injury."[9] Such benefits are therefore classified "as marital property to the extent they replace earnings during the marriage, and as separate

---

7. *Gragg v. Gragg*, 12 S.W.3d 412, 417 (Tenn. 2000) (footnotes and internal citations omitted).

8. See "Classifying Disability Benefits," 14 No. 9 Equitable Distribution J. 97, 99 (National Legal Research Group, Inc. 1997).

9. PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION: ANALYSIS AND RECOMMENDATIONS § 4.08(2)(b) (American Law Institute, Proposed Final Draft, Part I, 1997).

property to the extent they replace earnings before or after the marriage, without regard to how or when the benefit was acquired." [10]

Under Kentucky's statutory scheme for the distribution of property at dissolution, the trial court must first categorize each item of property as either marital or nonmarital under the framework embodied in KRS 403.190:

"[M]arital property" means all property acquired by either spouse subsequent to the marriage except:

(a) Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

(b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(c) Property acquired by a spouse after a decree of legal separation;

(d) Property excluded by valid agreement of the parties; and

(e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.[11]

■ Kentucky permits division as marital property of both vested and nonvested retirement benefits earned during the marriage.[12] Retirement benefits are classified as marital property not because the General Assembly failed to include them within the exclusions, but rather because they are a form of deferred compensation or savings earned during the marriage[13] similar to income earned or savings accumulated during the marriage.[14] In contrast, disability benefits are not a form of deferred compensation or savings. Post-dissolution disability benefits replace wages or income loss after the marriage, and, accordingly disability benefits should be treated differently from retirement benefits:

Pension and retirement benefits compensate individuals who live past retirement age. Such benefits constitute deferred compensation for services rendered and function as a

---

**10.** *Id.* at § 4.08(2)(b), comment (b).

**11.** KRS 403.190(2). *See also Travis v. Travis,* Ky., 59 S.W.3d 904, 908–909 (2001) ("Thus, in dissolution of marriage actions, a trial court's division of the parties' property requires a three-step process: (1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties."); Louise Everett Graham, "Using Formulas to Separate Marital and Nonmarital Property: A Policy Oriented Approach to the Division of Appreciated Property Upon Divorce," 73 Ky.L.J. 41, 45 (1984) (explaining that KRS 403.190 requires the determination of the separate assets of each spouse prior to the equitable division of the marital estate).

**12.** Graham & Keller, *supra* note 3 at § 15.21.

**13.** *Brosick v. Brosick,* Ky.App., 974 S.W.2d 498 (1998); Graham & Keller, *supra* note 3 at § 15.21.

**14.** Historically, Kentucky case law has treated income during the marriage, including income from nonmarital property, as marital property. See *Brunson v. Brunson,* Ky.App., 569 S.W.2d 173 (1978); *Sousley v. Sousley,* Ky., 614 S.W.2d 942 (1981); *Dotson v. Dotson,* Ky., 864 S.W.2d 900 (1993); Graham & Keller, *supra* note 3 at § 15.6 (2002 Pocket Part). However, in 1996, the General Assembly amended KRS 403.190(2)(a) so that income from gifted or inherited property will be marital only if one spouse's activities contribute to the production of the income. *Id.*

substitute for life savings. Like any joint savings accumulated during the marriage, pension and retirement benefits are subject to distribution as marital property upon divorce. On the other hand, disability benefits do not substitute for savings but instead 'protect against the inability of an individual to earn the salary or wages to which he or she was accustomed in the immediate past.' Generally, therefore, disability benefits replace income which is lost before retirement. Logic dictates that disability benefits and income should be treated in the same manner since disability benefits are income replacement. Since the future income of each spouse is not classified as marital property, disability benefits which replace future income should not be classified as marital property.[15]

We recognize that marital funds were used to acquire Appellant's disability coverage, but that does not change the character of the property the disability benefits replace. Disability coverage itself has been analogized to a form of term insurance "from which the marital partnership derived a full measure of protection during the marriage."[16] Like the proceeds of property insurance that take their character from the nature of the property they replace and not from the source of the funds used to pay the insurance premium,[17] Appellant's disability benefits should be classified according to the nature of the wages they replace rather than the source of the funds used to acquire his disability coverage.

Here, the Court of Appeals—following the "mechanical" or "mechanistic" approach—based its decision on its observation that the General Assembly has not specifically excluded disability benefits from the statutory definition of marital property. In support of its holding, the Court of Appeals relied upon *Glidewell v. Glidewell,*[18] where the Court of Appeals held that a firefighter's retirement pension was properly classified as marital property. The *Glidewell* Court reasoned that "had the legislature intended to exempt the police and firefighters' pension from division as marital property, they could have used . . . express language" as it had in the statute exempting teachers' retirement from division as marital property,[19] and "[s]ince they did not, it remains classified as marital property."[20] The Court of Appeals in this case applied the same rationale to Appellant's firefighter's disability benefits.

This leap of logic falls short of its intended landing. The fact that the legislature did not expressly exempt a firefighter's disability benefits from classification as marital does not mean that the legislature intended that disability benefits—like a firefighter's retirement pension—constitute marital property under KRS 403.190(2). First, the lack of express exclusion demonstrates only that the legislature gave no consideration to the issue.

---

15. *Gragg v. Gragg, supra* note 7 at at 418–419 (citations omitted).

16. Blumberg, *supra* note 3 at 1296.

17. *Id.* at 1281–82 ("All jurisdictions that directly address this issue classify insurance proceeds for property damage according to the nature of the underlying property. Thus, they ignore the source of the premiums and characterize insurance proceeds according to the classification of the damaged property.").

18. Ky.App., 859 S.W.2d 675 (1993).

19. KRS 161.700.

20. *Glidewell v. Glidewell, supra* note 18 at 678.

Second, and more important, prior decisions of this Court and the Court of Appeals contradict this assumption.

In *Weakley v. Weakley*,[21] this Court considered the question of whether a personal injury award to a married person should be considered as marital or as nonmarital property in the event of a dissolution of the marriage. Although personal injury awards are not among the enumerated exceptions in KRS 403.190, this Court stated:

> To the extent that a personal injury award for loss of earnings and permanent impairment of ability to earn money is applicable to the years while the marriage existed, it is marital property. To the extent that the award can be prorated to the remaining years of life expectancy following the dissolution of the marriage, it is nonmarital.
>
> However, any portion of the recovery which constitutes damages for pain and suffering must stand on a different footing because it is in no sense the replacement of earnings that otherwise would have accrued during the marriage.[22]

The *Weakley* Court cited with approval *Mosley v. Mosley*[23] wherein the Court of Appeals, after first noting that none of the statutory exceptions were applicable, held that compensation payments due to a worker following the dissolution of marriage were the individual property of the worker and not subject to division as marital property. The *Mosley* Court reasoned:

> A workers' compensation award differs from a pension. A pension accrues while one is working and, to the extent that it has accrued and is vested prior to the dissolution of a marriage, it must be considered with the marital estate.

Workers' compensation benefits are based on something that happened while one was employed and, although the event may have occurred during the time of the marriage, the compensation is awarded to replace the injured or diseased employee's loss of ability to work in the future. The benefits are not earned as compensation for working; they are paid to assist workers who will have diminished future earnings due to a work-caused injury or disease. Payments that are received, or weekly benefits that have actually accrued but have not yet been paid as of the date of the dissolution of the marriage, are to be included as marital property, just as earned income. But, payments which accrue and are paid after the dissolution of the marriage are not part of the marital property any more than the worker's future earnings would be. Compensation benefits, together with other income of a spouse, may be considered when determining what, if any, maintenance to award to the other spouse, but the nonworking spouse is not entitled to any specific portion of the future income from the worker's disability compensation.[24]

Accordingly, as demonstrated by *Weakley* and *Mosley*—both involving payments analogous to disability benefits—property can be nonmarital even if not expressly exempted from the definition of marital property.

The Court of Appeals also concluded that KRS 403.190(4) supports its holding. Again we disagree. KRS 403.190(4) protects a party when that party's spouse's pension benefits are excepted from division upon dissolution of the marriage:

---

**21.** Ky., 731 S.W.2d 243 (1987)

**22.** *Id.* at 244–245.

**23.** Ky.App., 682 S.W.2d 462 (1985).

**24.** *Id.* at 463.

If the retirement benefits of one spouse are excepted from classification as marital property, or not considered as an economic circumstance during the division of marital property, then the retirement benefits of the other spouse shall also be excepted, or not considered, as the case may be. However, the level of exception provided to the spouse with the greater retirement benefit shall not exceed the level of exception provided to the other spouse. Retirement benefits, *for the purposes of this subsection* shall include retirement or *disability allowances,* accumulated contributions, or any other benefit of a retirement system or plan regulated by the Employees Retirement Income Security Act of 1974, or of a public retirement system administered by an agency of a state or local government, including deferred compensation plans created pursuant to KRS 18A.230 to 18A.275 or defined contribution or money purchase plans qualified under Section 401(a) of the Internal Revenue Code of 1954, as amended.[25]

The Court of Appeals reasoned that the fact that KRS 403.190(4) includes "disability allowances" within its definition of retirement benefits "plainly dispels any notion that the General Assembly intended to exempt disability allowances generally from distribution as part of the marital estate."

We find this reasoning flawed for two reasons. First, the definition is limited by its own terms solely to subsection (4) and has no application to subsection (2). Second, the more reasonable interpretation is that the General Assembly, being mindful that "disability allowances" are properly classified as nonmarital property under subsection (2) and therefore exempt from division, provided the same protection to a

spouse whose spouse was receiving disability benefits.

■■■ Therefore, after considering Kentucky's statutory framework for the classification and division of property, the various approaches taken by other courts addressing this issue, and prior appellate decisions of this state addressing personal injury and workers' compensation awards analogous to disability benefits, we find that the better approach is to classify disability benefits according to the nature of the wages they replace rather than whether or not they are one of the excepted categories or whether the source of the funds used to acquire the benefits was marital. Accordingly, we reject the mechanical approach utilized by the Court of Appeals and we adopt the approach recommended by the American Law Institute that determines the character of disability benefits according to the character of the property those benefits replace.[26] Because Appellant's disability benefits replace post-dissolution wages that he would have received as a firefighter, such benefits are appropriately classified as Appellant's separate nonmarital property.

Finally, we would note that the trial court based its decision to classify the benefits as marital property primarily because it found significant the fact that Appellant was able to work at another occupation after his disability retirement. We view as irrelevant to the classification of Appellant's disability benefits as a *firefighter* whether he earned a living from another type of employment subsequent to his retirement. Appellant's disability benefits replaced post-dissolution wages as a *firefighter,* and because of his continuing disability, he still cannot earn wages as a *firefighter.*

---

**25.** KRS 403.190(4) (emphasis added).

**26.** *See supra* note 9 and surrounding text.

For the reasons mentioned, we reverse the decision of the Court of Appeals and remand to the trial court for it to assign Appellant's LFUCG disability benefits to him as his nonmarital property and to reconsider its marital property distribution.

LAMBERT, C.J., STUMBO and WINTERSHEIMER, JJ., concur.

COOPER, J., concurs by separate opinion in which GRAVES and JOHNSTONE, JJ., join.

COOPER, Justice, concurring.

The only issue presented to this Court by this case is whether a disability annuity payable to a disabled firefighter pursuant to KRS 67A.460 is divisible as marital property in a divorce proceeding. The answer is found in KRS 67A.620, which provided at the time of this divorce:

> The right to a retirement annuity, *disability annuity*, survivor's annuity or benefit, death benefit, or any other benefit under the provision hereof, by whatever name called, or refund, *is personal with the recipient* thereof, and the assignment, garnishment, execution or transfer of such benefit or any part thereof shall be void, except as herein provided. Any such annuity, benefit or refund shall not answer for debts contracted by the person receiving the same, and *it is the intention of this section that they shall not be attached or affected by any judicial proceeding.* (Emphasis added.)

Similar, though less explicit, language in the United States Code pertaining to social security benefits, 42 U.S.C. § 407(a),[1] military retirement benefits, 10 U.S.C. § 1440,[2] and railroad retirement benefits, 45 U.S.C. § 231m(a),[3] has consistently been held to preclude a division or setoff of those benefits as marital or community property in a divorce action, *e.g.:*

Social security benefits: *Gross v. Gross,* Ky.App., 8 S.W.3d 56, 58 (1999) (though such benefits can be considered in determining the "economic circumstances" of the respective parties pursuant to KRS 403.190(1)(d)); *see also In re Marriage of Boyer,* 538 N.W.2d 293 (Iowa 1995); *Pongonis v. Pongonis,* 606 A.2d 1055 (Me. 1992).

Military retirement benefits: *McCarty v. McCarty,* 453 U.S. 210, 226–28, 101 S.Ct. 2728, 2738–39, 69 L.Ed.2d 589 (1981), further holding that such benefits are also not subject to division because "retired pay is a 'personal entitlement' "[4] (*compare* that language with "personal with the recipient" in KRS 67A.620).

Railroad retirement benefits: *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 583–87, 99 S.Ct. 802, 809–11, 59 L.Ed.2d 1 (1979);

1. The right of any person to any future payment under this title shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

2. [N]o annuity payable under this subchapter is assignable or subject to execution, levy, attachment, garnishment, or other legal process.

3. [N]o annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated.

4. Congress subsequently enacted *The Uniformed Services Former Spouses Protection Act* (Public Law 97–252), 10 U.S.C. 1408, to permit division of "disposable retired or retainer pay," but not disability retirement pay. *Davis v. Davis,* Ky., 777 S.W.2d 230 (1989).

*Frost v. Frost,* Ky.App., 581 S.W.2d 582 (1979).

Any doubt as to whether KRS 67A.620 was intended by the General Assembly to shield a firefighter's retirement annuity from division or attachment in a divorce proceeding was erased when the General Assembly amended the statute in 1998 to permit attachment for court ordered child support but, significantly, omitted any language permitting attachment for court ordered division of marital property or spousal maintenance. 1998 Ky.Acts, ch. 255, § 33. Thus, this case could and should be decided solely within the framework of the statutory scheme of KRS 67A.360–.690. And, even if the General Assembly had not enacted KRS 67A.620, this case could be decided by application of existing Kentucky law established in *Mosley v. Mosley,* Ky.App., 682 S.W.2d 462 (1985) (post-dissolution installments of workers' compensation benefits are not marital property because they replace diminished future earnings due to a work-related injury or disease).

Kentucky has long adhered to the principle that the determination of whether property is classified as marital or non-marital depends primarily on "the time at which equity is acquired and the source of the funds used to acquire that equity." Louise E. Graham and James E. Keller, 15 *Kentucky Practice: Domestic Relations Law* § 15.62, at 598 (2d ed. West 1997); *see also* Louise E. Graham, *Using Formulas to Separate Marital and Nonmarital Property: A Policy Oriented Approach to the Division of Appreciated Property on Divorce,* 73 Ky.L.J. 41, 44 (1984–85). Thus, in *Newman v. Newman,* Ky., 597 S.W.2d 137, 139 (1980), the investment of the husband's $52,000.00 inheritance in the purchase of the marital residence was held to create a proportionate nonmarital interest in that same residence upon dissolution of the marriage; in *Daniels v. Daniels,* Ky.App., 726 S.W.2d 705 (1986), *overruled on other grounds, Neidlinger v. Neidlinger,* 52 S.W.3d 513 (2001), common stock purchased during the marriage was classified as the husband's nonmarital property because the funds used to purchase the stock were traceable to the husband's inheritance; in *Brandenburg v. Brandenburg,* Ky.App., 617 S.W.2d 871, 872 (1981), "nonmarital contribution" was defined as creation of equity by amounts expended after the marriage by either spouse from traceable nonmarital funds; and in *Jessee v. Jessee,* Ky.App., 883 S.W.2d 507 (1994), expenditure of the husband's lump sum workers' compensation settlement to purchase the parties' residence was held to be a nonmarital contribution insofar as the settlement represented lost wages that accrued prior to the marriage.

If it were necessary to decide this case without reference to KRS 67A.620 (and it is not), I would simply hold that the principle adopted in *Mosley, supra,* creates an exception to the "source of funds" rule for disability pensions and avoid the multiplicity of dicta in the majority opinion that could lead a reader to believe that our decision here represents a departure from the "source of funds" rule in favor of a general "nature of property replaced" rule. Further, the statement of the holding, *i.e.,* "we adopt the approach recommended by the American Law Institute that determines the character of disability benefits according to the character of the *property* [emphasis added] those benefits replace," citing *Principles of the Law of Family Dissolution: Analysis and Recommendations* § 4.08(2)(b) (A.L.I., Proposed Final Draft, Part I, 1997), is misleading. Section 4.08(2)(b) of the A.L.I. proposed final draft does not state that the character of disability benefits is determined by the *property* those benefits replace but that "[d]isability pay and workers' compensation payments

are marital property to the extent they replace *income or benefits* [emphasis added] the recipient would have earned during the marriage but for the qualifying disability or injury." *Id.* Substitution of the word "property" for "income or benefits" could lead some readers to conclude that our holding here is broader in scope than its presumed application only to disability retirement benefits.

Accordingly, I concur in the result reached in this case because that result is mandated by KRS 67A.620. I do not join in the rationale articulated by the majority opinion in support of that result.

GRAVES and JOHNSTONE, JJ., join this concurring opinion.