**Buddy Lee BAILEY, Appellant**

v.

**Linda Beth BAILEY, Appellee.**

**No. 2012–CA–000508–MR.**

Court of Appeals of Kentucky.

May 10, 2013.

J. Key Schoen, Louisville, KY, for appellant.

Mark D. Dean, Shelbyville, KY, for appellee.

Before CAPERTON, LAMBERT, and MAZE, Judges.

## OPINION

LAMBERT, Judge:

Buddy Lee Bailey appeals from the Spencer Family Court's January 5, 2012,

order setting aside its previous order denying Linda Beth Bailey's motion to alter, amend, or vacate. Buddy also appeals the trial court's February 20, 2012, order denying his motion to alter, amend, or vacate the January 5, 2012, order. After careful review, we affirm the orders of the trial court.

The Baileys were married on July 12, 1974. During their thirty-year marriage, Buddy was employed with Alcoa, and Linda was primarily a homemaker.[1] At all times during his employment with Alcoa, Buddy was an active participant in its retirement pension plan, and throughout the parties' marriage, Buddy accumulated a sizable pension fund by virtue of his employment.

Subsequent to the parties' separation, Buddy was injured and filed a claim for short term disability. Buddy filed a petition for dissolution of the marriage on March 22, 2004. Linda filed her response in April, and the parties were ordered to mediation by the Domestic Relations Commissioner of the Spencer Circuit Court. Thereafter, the mediator filed a report on September 9, 2004, indicating that the parties had reached a settlement. On October 18, 2004, an order captioned "Temporary Order From Mediation" was entered by the court; however, this order included a paragraph which stated, "Husband agrees to provide to wife's counsel information on his retirement account, including a policy, and all pertinent information regarding his disability." Linda claims on appeal that she was not provided with this information.

The trial court entered a limited decree of dissolution on December 10, 2004, which specifically provided that "the issues of marital and non-marital personal and real property and debts are hereby reserved for adjudication." Over the next several years the issues of property and debt division were resolved in piecemeal fashion by the court. On August 22, 2005, the court held a hearing related to the division of tangible personal property and child custody. The parties were before the court arguing over personal property that Buddy was going to retrieve from the marital residence and schooling issues related to their children in January 2006.

On March 30, 2006, the court ordered the parties to prepare a list of personal items that Buddy was not allowed to remove from the marital residence. On August 30, 2006, the court entered a judgment against Linda in the amount of $4,011.94, which represented the value of personal property Linda did not return to Buddy. In September 2006, Buddy's child support obligation was reduced because his short term disability had terminated.

On November 3, 2006, Buddy's application to convert his retirement pension into a disability pension was approved by Alcoa. At that time, the issue regarding the division of Buddy's retirement/disability plan had not been resolved by the parties or the court. In contravention of the trial court's previous order, Linda claims Buddy had still not provided her with a copy of the applicable retirement policy.[2]

For nearly two years, nothing occurred in the case. On June 23, 2008, Buddy filed a motion to hold Linda in contempt for her

1. Buddy started his employment with Reynold's Aluminum on April 12, 1976. Reynold's is now Alcoa.

2. Linda claims she did not receive a copy of the applicable Alcoa Retirement/Disability

Plan until August 2011. Buddy claims he supplied all documentation in his possession regarding his disability benefits on or about December 2, 2009.

failure to satisfy the previous judgment. The matter was continued at the request of the parties and nothing was done for more than a year. It was brought back in front of the court when Linda requested a status conference. In October 2009, the court again ordered the parties to mediation. After another year passed, Linda filed a motion asking for another hearing date. Linda also requested that the court order the parties to exchange "all information including but not restricted to policies, status as to payment and current account amounts regarding any retirement or disability accounts existing during the term of marriage of the parties within 30 days." The trial court granted Linda's motion and entered an order to that effect on September 27, 2010.

On November 1, 2010, the court held another hearing, at which Linda acknowledged her contempt for failure to pay the judgment. The court ordered the parties to brief the issue of the divisibility of Buddy's retirement pension. On June 13, 2011, the trial court entered an order holding that Buddy's retirement pension was not subject to division as marital property. The court concluded that because Buddy's retirement pension was converted into a disability pension, the benefits were his separate property.

On June 21, 2011, Linda timely filed a motion to alter, amend, or vacate the court's June 13th order. In her motion, Linda requested that the court reopen the dissolution action to adjust the initial distribution of the marital estate in order to achieve a just and equitable settlement between the parties. As a basis for her motion, Linda stated that she was never provided with a copy of Buddy's retirement policy and the lack of that information caused an unfair and inequitable division of marital assets.

Prior to holding a hearing on Linda's Kentucky Rules of Civil Procedure (CR) 59.05 motion, the court permitted Linda to take Buddy's deposition and to obtain the retirement policy that Buddy had previously been ordered to produce. On July 25, 2011, Linda filed a motion requesting that the court order Buddy to appear for his deposition.

Linda claims throughout her brief that Buddy went to great lengths to avoid his deposition. The record supports this statement, although the motions for continuances state that Buddy's counsel was not available to attend the depositions because he was occupied in other cases. On August 11, 2011, the court ordered Buddy to appear for his deposition on August 19, 2011, and the deposition finally occurred on that date. Linda claims that it was not until this deposition that she received a copy of Buddy's retirement policy.

On September 26, 2011, the trial court held a hearing on Linda's previous motion to alter, amend, or vacate. On January 5, 2012, the court finally entered an order granting Linda's motion, holding that Linda was entitled to an entry of a Qualified Domestic Relations Order (QDRO) allocating her one-half of Buddy's pension benefits accrued between April 12, 1976, and December 19, 2004. The court found that, pursuant to the applicable Alcoa Retirement Plan II policy, when Buddy reaches the age of 62, his disability pension ends and becomes an ordinary retirement pension. The court also ordered Linda to pay all amounts owed to Buddy, plus statutory interest, under the judgment entered on August 30, 2006.

On January 17, 2012, Buddy filed a motion to alter, amend, or vacate, the court's order entered on January 5, 2012. In his motion, Buddy argued that he had provided all of the necessary documentation to Linda regarding his retirement/disability

pension. He further alleged that the Alcoa Retirement Policy was insufficient to overcome the fact that his retirement pension was previously converted into a disability pension. Finally, Buddy argued that the trial court was required to award him attorney's fees for having to bring his motion for contempt.

A hearing was held on Buddy's motion on February 20, 2012. Thereafter, the court issued an order denying Buddy's motion. This appeal now follows.

On appeal, Buddy argues that the trial court's June 13, 2011, order should not have been set aside and that the trial court failed to rule on his motion for attorney's fees.

In his brief to this Court, Buddy fails to cite to any legal authority in support of his argument that the trial court should not have set aside its June 13, 2011, order. Kentucky law has long held that an alleged error may be waived when an appellant fails to present any authority in support of his argument advanced on appeal. *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky.App.2005). Specifically, the court in *Hadley* opined:

Our courts have established that an alleged error may be deemed waived where an appellant fails to cite any authority in support of the issues and arguments advanced on appeal. *See Pierson v. Coffey*, 706 S.W.2d 409, 413 (Ky. App.1986). "[W]ithout any argument or citation of authorities, [an appellate] [c]ourt has little or no indication of why the assignment represents an error." *State v. Bay*, 529 So.2d 845, 851 (La. 1988). It is not our function as an appellate court to research and construct a party's legal arguments, and we decline to do so here.

Thus, arguably under *Hadley*, Buddy's failure to cite any legal authority in support of his argument that the trial court erred in setting aside the June 2011 order waives his arguments on appeal. However, we will nonetheless briefly address the merits of Buddy's argument.

 A trial court's ruling on a motion made pursuant to CR 59.05 is reviewed under an abuse of discretion standard. *Bowling v. Kentucky Dept. of Corrections*, 301 S.W.3d 478, 483 (Ky.2009). CR 59.05 provides that "[a] motion to alter or amend a judgment, or to vacate a judgment and enter a new one, shall be served not later than 10 days after entry of the final judgment." Generally, a trial court has unlimited power to amend and alter its own judgments. *Gullion v. Gullion*, 163 S.W.3d 888, 891–892 (Ky.2005).

Although CR 59.05 does not specifically set forth the grounds for relief under the rule, the Supreme Court of Kentucky has cited to its federal counterpart, Federal Rules of Civil Procedure 59(e), in limiting the grounds to the following:

There are four basic grounds upon which a Rule 59(e) motion may be granted. First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice. Serious misconduct of counsel may justify relief under this theory. Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.

*Gullion*, 163 S.W.3d at 893, quoting 11 Wright & Miller, Federal Practice and Procedure: Civil (2d Ed.) § 2810.1. A CR 59.05 motion may be granted on the basis of newly discovered evidence or evidence that was not available at the time of trial. *Id.* at 894. Unavailable evidence must be

evidence that existed at the time of the trial. *Id.*

In the instant case, the second and third factors espoused in *Gullion* justified the family court granting Linda relief under CR 59.05. The contested issue in this case was the divisibility of Buddy's retirement plan. When the family court had issued its initial ruling regarding the division of Buddy's retirement plan, the relevant plan documents had not been made available to either Linda or the court. Twice, Buddy was ordered to provide a copy of his retirement policy to Linda. While Buddy claims he provided the policy in 2009, the family court's September 7, 2010, order requiring Buddy to provide the documents indicates otherwise.[3]

A dissolution action necessitates a full and candid disclosure of information relating to the parties' assets. Such disclosure is necessary so that an equitable allocation of marital assets can be made. Despite being ordered to produce the necessary documentation, Buddy instead makes the argument on appeal that Linda should have obtained the information herself. We agree with Linda that this is absurd—a party to a dissolution proceeding should not be required to hunt down information that the other party has been previously ordered to produce.

Nonetheless, once obtained, the retirement policy illustrates the limited nature of Buddy's disability benefits. The policy clearly and unequivocally states, "[w]hen you reach age 62, your disability pension ends and you become eligible for a normal pension based on the rules in effect when your pension service terminates." The trial court reconsidered its earlier conclusion that under *Holman v. Holman*, 84 S.W.3d

903 (Ky.2002), Buddy's pension was not marital property.

In *Holman*, the Kentucky Supreme Court held:

> Pension and retirement benefits compensate individuals who live past retirement age. Such benefits constitute deferred compensation for services rendered and function as a substitute for life savings. Like any joint savings accumulated during the marriage, pension and retirement benefits are subject to distribution as marital property upon divorce. On the other hand, disability benefits do not substitute for savings but instead 'protect against the inability of an individual to earn the salary or wages to which he or she was accustomed in the immediate past.' Generally, therefore, disability benefits replace income which is lost before retirement. Logic dictates that disability benefits and income should be treated in the same manner since disability benefits are income replacement. Since the future income of each spouse is not classified as marital property, disability benefits which replace future income should not be classified as marital property.

*Id.* at 907–908. (Footnote Omitted). We agree with Linda that the instant case involves a factual scenario that is distinguishable from *Holman*. Unlike Holman, Buddy's application for disability benefits was approved sometime after the parties' divorce was finalized. Furthermore, Buddy's pension benefits were only temporarily reclassified as disability benefits, while the benefits in *Holman* were never to be reclassified on a date certain. Therefore,

---

**3.** The so-called plan documents that Buddy supplied were simply printouts of the frequently asked questions section of the Retirement Plan's website. In fact, Buddy's own attorney questioned the document's authenticity when Linda's counsel presented them to Buddy for inspection.

the benefits in *Holman* never regained their status as marital property. The Court in *Holman* went to great lengths to explain that disability benefits are to be classified in accordance with the nature of the wages that they replace. In the instant case, the current disability benefits replace Buddy's earnings; however, when Buddy attains the age of 62, his benefits will be reclassified as ordinary pension benefits, which are marital property.

■ It is undisputed that Linda was entitled to a portion of Buddy's pension as marital property at the time of the divorce. She had no immediate right to receive benefits, but she is entitled to benefits when Buddy reaches the age of 62. We agree with Linda that Buddy's interpretation of *Holman* as controlling the case at bar is harsh. Other than a home, a retirement plan is likely to be the largest asset acquired during a marriage. However, unlike a home, one spouse can alienate the other from his or her share of retirement benefits through an election of disability coverage. If this Court were to find that *Holman* controlled the case at bar, then the behavior of one spouse would be permitted to impoverish the other spouse. Equity demands otherwise.

We find no abuse of discretion with the trial court's order requiring the entry of a QDRO allocating to Linda half of the benefits accrued from April 12, 1976, through December 10, 2004.

■ Buddy also argues that the trial court failed to rule on his motion for attorney's fees. Linda contends that the trial court was not required to award attorney's fees and that its failure to do so does not indicate that it failed to rule on the motion, but instead indicates only that it was denying Buddy's motion.

■ Again, we agree with Linda. In its January 5, 2012, order, the family court addressed Buddy's motion for contempt and ordered Linda to pay all amounts due and owing under the judgment entered on August 30, 2006, with statutory interest, but did not award Buddy any attorney's fees. Under Kentucky Revised Statutes (KRS) 403.220, a family court has broad discretion in awarding attorney's fees in a dissolution proceeding. *See Tucker v. Hill,* 763 S.W.2d 144, 145 (Ky.App.1988) ("The allocation of court costs and attorney's fees is entirely within the discretion of the trial court."). Generally, the only factor that a court is required to consider when awarding attorney's fees is the financial resources of the parties. *See Poe v. Poe,* 711 S.W.2d 849, 852 (Ky.App.1986). In the instant case, the trial court clearly considered the financial resources of both parties throughout the lengthy proceedings. Specifically, the trial court did so when it ordered Buddy to divide the marital portion of his retirement benefits and when it ordered Linda to pay Buddy the judgment previously entered, plus interest. Buddy has failed to identify anything in the record that would indicate that the family court abused its discretion in denying his request for attorney's fees.

Based on the foregoing, we affirm the January 5, 2012, order of the Spencer Circuit Court and the February 20, 2012, order denying Buddy's motion to alter, amend, or vacate the January 5, 2012, order.

ALL CONCUR.