RENDERED: DECEMBER 15, 2016
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000661-DG

KENNETH KIRILENKO                                               APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                      CASE NO. 2014-CA-000615-MR
BOYLE CIRCUIT COURT NO. 10-CI-00518

CHERRYL KIRILENKO                                               APPELLEE

**OPINION OF THE COURT BY JUSTICE CUNNINGHAM**

**REVERSING AND REMANDING**

Appellant, Kenneth Kirilenko ("Kenneth"), and Appellee, Cherryl Kirilenko ("Cherryl"), were married in 1986. During the marriage, they resided in Connecticut, where Kenneth was employed by the state government until July 1, 2001, when he retired and began to receive disability benefits from the Connecticut State Employees Retirement System. Cherryl moved to Kentucky for employment reasons in 2000, and Kenneth followed soon after his retirement and disability took effect. Kenneth and Cherryl separated in 2004.

Cherryl filed for a dissolution of marriage in Boyle Circuit Court in 2010. The court entered a decree of dissolution on November 7, 2012, in which the parties stipulated that the monthly benefits which Kenneth received were from the State of Connecticut disability retirement plan. By an amended decree of

dissolution entered on May 2, 2013, the court considered whether the plan benefits were marital property. In order to resolve this issue, the court first had to determine whether to apply Connecticut or Kentucky law. Under Connecticut law, a portion of these benefits may be considered marital. *Mickey v. Mickey*, 974 A.2d 641 (Conn. 2009). Under Kentucky law, however, disability benefits which replace future income are classified as non-marital and are not subject to equitable distribution. *Holman v. Holman*, 84 S.W.3d 903, 908 (Ky. 2002).

The trial court determined that, because Kentucky was the domicile of both parties at the time of dissolution, Kentucky law, rather than Connecticut law, governed the classification and distribution of the disputed asset. On appeal, a unanimous Court of Appeals reversed and instead applied Sections 258 and 259 of the *Restatement (Second) of Conflict of Laws* (1971). Those provisions apply the "most significant relationship" test. The court concluded that Connecticut has the most significant relationship to the asset and that the characterization and distribution of those benefits should be determined under Connecticut law.

In so holding, the court relied on the facts that Kenneth's right to receive the benefits at issue was contractual and based on a statutorily created retirement plan, that his right to receive those rights accrued in Connecticut, and that the benefits were payable pursuant to Connecticut law. Although citing to Sections 258 and 259 of the *Restatement*, it appears that the court's reasoning reflected considerations articulated in Section 188 of the

2

*Restatement*, which governs conflict of law issues concerning contracts. However, the Court of Appeals also noted that the "most significant relationship" test may not be appropriate for *all* personal property and interests acquired during a marriage. Having reviewed the record and the law, we reverse the Court of Appeals and remand this case to the trial court for further consideration.

## Analysis

Since the issue here is a matter of law, our standard of review is *de novo*. As previously discussed, the Court of Appeals relied on Sections 258 and 259 of *Restatement (Second) Conflict of Laws* (1971). Section 258 provides:

> (1) The interest of a spouse in a movable acquired by the other spouse during the marriage is determined by the local law of the state which, with respect to the particular issue, has **the most significant relationship to the spouses and the movable** under the principles stated in § 6.

> (2) In the absence of an effective choice of law by the spouses, greater weight will usually be given to the state where the spouses were domiciled at the time the movable was acquired than to any other contact in determining the state of the applicable law. (Emphasis added).

In addition, Section 259 provides:

> A marital property interest in a chattel, or right embodied in a document, which has been acquired by either or both of the spouses, is not affected by the mere removal of the chattel or document to a second state, whether or not this removal is accompanied by a change of domicil to the other state on the part of one or both of the spouses. The interest, however, may be affected by dealings with the chattel or document in the second state.

3

Kentucky follows the "most significant relationship" approach in tort and contract cases. *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 566-67 (Ky. 2012); *Saleba v. Schrand*, 300 S.W.3d 177, 182 n.2 (Ky. 2009). However, this Court has not adopted such an approach in domestic cases—and neither have the majority of our sister states. Instead, Kentucky law provides that, "[a]bsent an agreement to the contrary, in dissolution of marriage proceedings the law of the marital domicile applies." *Fehr v. Fehr*, 284 S.W.3d 149, 153 (Ky. App. 2008) (citing *Rowley v. Lampe*, 331 S.W.2d 887 (Ky. 1960); In *Rowley* and *Fehr*, the plaintiffs resided in Kentucky—the forum state for the dissolution proceedings. Of course, the Kentucky Circuit Court only has jurisdiction if at least one party has resided in Kentucky for at least 180 days immediately prior to filing the dissolution petition, or as otherwise permitted under KRS 403.140.

In fact, "[t]he consistent practice in modern property division cases is to classify and divide all property under the law of forum." 1 Equit. Distrib. of Property, 3d § 3:13 (Choice of Law) (2015). Other than a few exceptions, "there is essentially no significant body of nationwide case law dividing property under the law of another jurisdiction." *Id.* The logic of this majority rule is clear:

> To begin with, application of any other rule would pose immense practical problems. Equitable distribution law is by any standard complex and difficult to apply. Judges in many states have had substantial difficulty construing their own law correctly, let alone understanding the law of other jurisdictions[;]
>
> ...

> Beyond its substantial administrative burden, application of foreign law to individual assets acquired out of state would also lead to unjust results. Property division systems cannot be viewed in isolation; they are an integral part of each state's overall domestic law, and there are often complex trade-offs between property division and other issues[;] [and]
>
> ...
>
> [T]he Restatement was adopted in 1971, at a time when equitable distribution did not yet exist. *Id.*

Even among states adopting the *Restatement* approach, the forum state is usually determined to have the most significant relationship to the case. *Id.*

We see no reason to depart from the majority rule that the classification and division of all property in dissolution cases is governed by the law of forum—i.e. Kentucky. However, our decision here does not implicate cases where title and third party rights are at issue.

Lastly, we must address some additional concerns raised by the Court of Appeals. In its opinion and order, the court raises the following issues:

> The record does not clearly establish the extent, nature and terms of Kenneth's disability retirement benefits. There is no evidence whether the benefits include a retirement component, or whether they are subject to conversion to retirement benefits at some point in the future. Likewise, the record does not clearly show that the [] plan administration would honor a Qualified Domestic Relations Order (QDRO) purporting to divide the benefits. Since these involve questions of fact, the parties must address these issues to the trial court.

In support, the Court of Appeals cites *Bailey v. Bailey*, 399 S.W.3d 797, 802-03 (Ky. 2013), which held that disability benefits subsequently converted to regular pension benefits are divisible as marital property at the point of

conversion. Having reviewed the record and the trial court's order, we agree with the Court of Appeals on these remaining issues. Therefore, we remand this case to the trial court to address these additional concerns.

## Conclusion

For the foregoing reasons, we hereby reverse the Court of Appeals and remand this case to the Boyle Circuit Court.

All sitting. Hughes, Keller, and Wright, JJ., concur. Venters, J., concurs in result only by separate opinion in which Minton, C.J., and Noble, J., join.

VENTERS, J., CONURRING IN RESULT ONLY: I concur in result only with Majority. Although I agree that this case must be remanded to the trial court for application of the proper standard, I believe that instead of applying the rule of the marital domicile as the Majority directs, we should apply the "most significant relationship test" articulated by Sections 258 and 259 of the *Restatement (Second) of Conflict of Laws* (1971).

Minton, C.J., and Noble, J., join.

COUNSEL FOR APPELLANT:

Ephraim Woods Helton
HELTON, ERWIN & WALTER

COUNSEL FOR APPELLEE:

Theodore H. Lavit
Cameron Cole Griffith
THEODORE H. LAVIT & ASSOCIATES, PSC