**Fred D. BROOKS et al., Appellants,**

**v.**

**William D. MEYERS et al., Appellees.**

Court of Appeals of Kentucky.

May 20, 1955.

Harry S. McAlpin, Louisville, for appellants.

William E. Berry, Louisville, for appellees.

HOGG, Judge.

This is an appeal from a judgment of the Jefferson Circuit Court dismissing appellants' complaint on appellees' motion. The effect of the judgment is to declare valid Ordinance No. 28, Series 1953, of the City of Louisville providing for the improvement of 34th Street from Young Avenue to Virginia Avenue and making provision for certain assessments against abutting property owners. The basic contention of the appellants, and others similarly situated, is that the ordinance and assessments are void, because, they say, the City of Louisville had no authority to make the improvement pursuant to KRS 93.370, known as the "Regular Plan," but should have proceeded under the statute providing for "Arterial Highways." KRS 93.880 to and including KRS 93.950.

The appellants and others similarly situated, under the above-mentioned ordinance, have been assessed a special street improvement tax for the construction of the street.

On August 1, 1930, the City Planning and Zoning Commission of the City of Louisville (not the Board of Aldermen) adopted in general terms a "Major Street Plan" for the City of Louisville, as shown by Ordinance No. 279, which plan was based on a survey and report by "Bartholomew." The Major Street Plan so adopted provided for an extensive plan of major streets throughout the City, designating the extent and width thereof.

Thirty-Fourth Street was designated on the Major Street Plan as a proposed arterial highway, which included the previously unimproved portion of the said street from Young Avenue to Virginia Avenue, here involved. That part of 34th Street recently has been constructed with a carriageway of 42 feet, and Ordinance No. 28, Series 1953, provides that the cost of $16/42$ of the 42-foot width should be paid out of the proceeds of the Street and Traffic Bond Issue, and the cost of the remaining $26/42$ should be apportioned and assessed against the owners of the property in the quarter squares abutting on 34th Street as provided in "Public Ways-Regular Plan." KRS 93.370. It was deemed, presumably, that the width of the "average" old paved street (34th) in Louisville was 26 feet. Therefore, the property owners were assessed $26/42$ of the cost and the City paid out of the proceeds of its bond issue $16/42$ of the total cost, the latter fractional part representing the extra width of the street.

In 1950 the voters in the City of Louisville authorized the issuance of bonds in the sum of $5,000,000 to be expended for improvements to the traffic conditions existing in Louisville. These improvements were to be made in pursuance of the "Barton Plan." The estimated cost of construction and reconstruction of 135 miles of major streets was set forth in the "Barton Plan" as $5,507,300. The actual construction of the section of 34th Street from Young Avenue to Virginia Avenue, as authorized by Ordinance No. 28, Series 1953, was $115,361.

The appellants sought relief in the alternative as follows: 1. that the assessments made under the authority of Ordinance No. 28 be declared invalid; that the City of Louisville refund to any of the appellants who have paid such assessments the amounts of said payments; 2. alternatively, in the event Ordinance No. 28 is not adjudged invalid, then they ask that the sums provided for major street improvements by funds from the $5,000,000 bond issue first be applied to the cost of the improvements, and that credit be applied before assessment of any cost to appellants for such improvements; and if the credit is sufficient to pay the entire cost of the improvements, then that they be relieved of all assessments against them and proper refund be made to those who have paid all or any part of such assessments; 3. finally, in the alternative, if Ordinance No. 28 is not invalid, and if the appellants are due no credit by application of funds from the bond issue aforesaid, or if the credit is not sufficient to pay the entire assessment, then that the assessments be reapportioned *to include the benefited area half-way to the next arterial highway on each side of 34th Street.* KRS 93.910.

In addition to the basic contention of the appellants that Ordinance No. 28, Series 1953, which provided for the improvement of 34th Street from Young Avenue to Virginia Avenue, and for assessments as hereinabove mentioned, is invalid, the appellants also contend that since 34th Street has been constructed pursuant to the "Barton Plan" the entire cost of the street improvement in the sum of $115,361 should be paid out of the proceeds of the bond issue before any assessment is made against their property.

The improvement of this street under Ordinance No. 28, Series 1953, was done, with some variations, under the plan approved in the case of City of Louisville v. Helman, Ky., 1952, 253 S.W.2d 598, in which case we approved the *widening* of

Hill Street in the City of Louisville from 26 to 36 feet, the cost of the additional 10 feet to be paid out of the proceeds of the $5,000,000 street improvement bond issue, hereinbefore referred to, which was approved at the 1950 general election under the "Barton Plan," notwithstanding the fact that KRS 93.370 provided that street improvements should be made at the exclusive cost of abutting property owners.

It is the claim of appellants that the City has adopted a plan of arterial highways pursuant to KRS 93.880, and that 34th Street, is one of such highways and, therefore, the provisions of KRS 93.880 to and including 93.950 are mandatory and require a much more extensive "benefited area," as defined in KRS 93.900, and, therefore, it would be unlawful to assess any portion of the cost of such improvement (in this case $26/42$ thereof) against the smaller territory as is called for under Ordinance No. 28, Series 1953, the "Regular Plan," as provided in KRS 93.370.

After the adoption of the ordinance of 1930, which apparently was done pursuant to section 2839b-5, Carroll's Kentucky Statutes, known as the "Major Street Improvement Act," the City continued to construct certain streets embraced within the major street plan in accordance with the terms of the "Regular Plan," rather than the "Major Street Improvement Act." This fact is reasonably apparent because in the case of Henry Bickel Co. v. City of Louisville, 282 Ky. 38, 137 S.W.2d 717, we held, in passing upon the general demurrer to the amended petition filed by Bickel, that since the pleadings showed that the City had continued to construct streets under the "Regular Plan" it had abandoned the "Major Street Improvement Plan." It should be here observed that the "Major Street Improvement Act" was repealed in 1942 and the "Arterial Highway Act" was enacted in its stead and no enabling ordinance was enacted by the Board of Aldermen as contemplated by the Act.

The Chancellor, in his opinion, assumed that the City had adopted a major street plan, or "plan of arterial highways such as is contemplated by KRS 93.880." Under the facts pleaded, such assumption may not be unreasonable. The question then arises, is it necessary that the City provide for the assessment of the larger benefited area pursuant to KRS 93.900 to and including 93.920, or may it pay $16/42$ of the cost of the 42-foot wide street out of the bond issue (as was approved in the Helman case) and require the property owners to pay the balance, $26/42$, thereof under the "Regular Plan," as provided by KRS 93.370. The Chancellor, on this point, held that the City's plan and proposal as embodied in Ordinance No. 28, Series 1953, was valid and enforceable. We adopt his reasoning and opinion in that respect, which is a follows:

"Turning to KRS 93.950, we find that it provides in part:

"'(2) The provisions of KRS 93.880 to 93.950 shall not in any way be construed as any restriction upon said city making the usual and customary repairs, including curbing replacements and sidewalk construction in any of the public ways designated as arterial highways before the actual construction and reconstruction of said public ways as arterial highways under the provisions of KRS 93.880 to 93.950, and the making of such necessary and ordinary repairs and curbing replacements and sidewalk construction or reconstruction, *including the original construction of any public ways in the manner heretofore provided for by the charter of said cities,* shall not in any way be construed as an abandonment of such public way as an arterial highway or operate as an estoppel against the city from later constructing or reconstructing the same as an arterial highway according to the provisions of KRS 93.880 to 93.950.' (Emphasis supplied.)

"It is elementary that a Statute should be construed, if possible, so that no part of it is meaningless or ineffectual. The Statute as written clearly contemplates that there may (at the

City's election) be original construction of (sic) payment in a designated arterial highway, financed under the Regular Plan. To reconcile this provision with KRS 93.900 defining a larger benefited area, we believe requires measuring the economic impact on the abutting property owners. With KRS 93.900 on the books, it would clearly be an inequitable burden to impose on the abutting property owners the *entire cost* of an arterial highway, i. e., a much larger street than is customary or usual. However, in the case at bar the equivalent of the ordinary neighborhood street (26' wide) is being assessed against the owners of abutting property, and the excess, or $^{16}/_{42}$ of the total, is being paid from bond money. This, we believe, satisfies the test of reasonableness, and makes the City's proposal lawful under the optional language of KRS 93.950, construed together with 93.900."

We might say in addition that KRS 93.950 (1) provides:

"(1) KRS 93.880 to 93.950 shall in no way be construed as repealing any of the statutes or charter provisions of first-class cities with respect to ordinary public way improvement."

■ With respect to the contention of appellants that *all* of the proceeds of the bond issue should have been applied on the construction of 34th Street before assessing any of the abutting property owners, a short and complete answer, it seems, will be found in the text of the question submitted to the voters quoted in full in an exhibit filed in this case, and which text, insofar as applicable here, reads as follows:

"Shall the City * * * incur an indebtedness * * * for the purpose of financing a program * * * by providing funds to pay all or a part of the cost of the improvement of existing streets * * *."

It seems clear that all or a part of the cost of any street improvement could be paid out of the bond issue, and any part which might not be paid out of the bond issue could be paid by other means, including that of local assessment, as was here used, to cover $^{26}/_{42}$ of the cost.

We agree with the Chancellor that the City proceeded in accordance with its right to proceed as shown in KRS 93.950, and the City's proposal and action was lawful and binding.

The judgment is affirmed.