Bruce William SCHOENBACHLER,
Appellant,

v.

Angela Marie MINYARD, Appellee.

No. 1999–SC–0628–DG.

Supreme Court of Kentucky.

April 24, 2003.

Rehearing Denied Aug. 21, 2003.

Peter L. Ostermiller, Haddad Law Office, Louisville, Counsel for Appellant.

Joseph V. Mobley, J. Russell Lloyd, Louisville, Counsel for Appellee.

Opinion of the Court by Justice KELLER.

## I. ISSUES

The primary issue in this appeal concerns the trial court's calculation of Appellee's gross income and its decision not to order either party to pay child support to the other. The trial court awarded the parties joint custody of their minor child. Although Appellee produced tax returns that reflected a monthly income substantially smaller than Appellant's, the trial court found that Appellee's "lifestyle and property exceeded that which could be obtained" from Appellee's claimed monthly income, and accordingly surmised that Appellee "had some additional income from

another source." The trial court then imputed additional monthly income to Appellee, found that the parties had equal monthly incomes, and did not award child support to either party. The Court of Appeals vacated and remanded with directions for the trial court "to calculate child support based upon the documented income of the parties." Appellant asks this Court to decide whether, in calculating child support obligations, trial courts must consider only documented income. While we believe that, in such cases, parties must file documented income statements, we do not interpret "income" so narrowly as to include only documented income. We therefore hold that, in making child support determinations, courts must consider all income proven by substantial evidence, regardless of whether that income is documented. We nonetheless affirm the Court of Appeals on this issue because we agree that the evidence in the case at bar did not support the trial court's finding imputing additional monthly income to Appellee.

The other primary issue on appeal concerns the trial court's calculation of Appellant's nonmarital interest in the parties' marital residence. Appellant contributed nonmarital funds of $6,188.00 towards the parties' original purchase of the marital residence. When the parties later satisfied the original mortgage and refinanced the marital residence at a lower interest rate, Appellant contributed additional nonmarital funds of $8,577.61 to reduce the principal balance and pay for closing costs. In determining Appellant's nonmarital interest in that property, the trial court considered only Appellant's contribution towards the original purchase of the residence, and not his contribution at the time of refinancing. The Court of Appeals found no error and affirmed. Did Appellant's refinancing contribution give him an additional nonmarital interest in the marital residence? We hold that,

to the extent that Appellant's nonmarital contribution at the time of refinancing increased the parties' equity in the marital residence, the contribution shall be considered in determining Appellant's nonmarital interest in the property. However, to the extent that those nonmarital funds were applied to closing costs that did not increase the parties' equity, they shall not be considered in determining Appellant's nonmarital interest in the property.

## II. FACTUAL BACKGROUND

The parties were married in 1989. Approximately four and one-half (4½) years later, in 1994, and after the birth of one (1) child, the parties separated, and Appellee filed a petition for dissolution of their marriage. The trial court dissolved the parties' marriage, and after a contested trial in 1996, the trial court divided the parties' property, assigned the marital debts, and awarded the parties joint custody of their minor child.

Appellant's income is not disputed. He claimed, and documented, a gross monthly income of $3,333.33 from a bi-weekly salary of $1,538.46 from employment in the construction industry, and he testified that he had no other income. Appellee claimed total monthly income of $1,740.00. She produced income tax returns to substantiate $1,710.00 of her claimed monthly income, and she testified to additional monthly income of $30.00 from the sale of Kentucky Derby tickets. However, after finding that her "lifestyle and property exceeded that which could be obtained" from her claimed income, the trial court theorized that Appellee "had some additional income from another source" and imputed additional monthly income to Appellee in an amount "at a minimum, the equivalent of [Appellant's]." Accordingly, and after making the additional finding that the child's time was to be equally

divided between the parties, the trial court did not order either party to pay child support to the other:

> An award of child support shall be made pursuant to KRS 403.210. KRS 403.212(2) provides that "gifts" are to be included in gross income, and Angela has acknowledged the receipt of substantial gifts from friends and family. In addition, Angela clearly has cash flow in excess of IRS reported income, and has admitted to receiving income from the scalping of tickets and placing bets with bookies. While she protests that she has never made significant money from these activities, the testimony that she no longer engages in these activities is likewise unbelievable. This Court has a right to impute income to the Petitioner for the purposes of assigning child support and will do so. Given however the limited and speculative proof tendered as to the additional amounts she is given and "earns" however, and given their relatively equal time sharing afforded each parent, this Court will impute Petitioner's income to be, at a minimum, the equivalent of respondent's, thereby negating any necessity for either party to pay support to the other.

Appellee filed a motion for the trial court to reconsider its findings, and the trial court did so only to the extent that it clarified its finding that Appellee "admitted to receiving income from the scalping of tickets and placing bets with bookies." However, the trial court continued to impute income to Appellee and reaffirmed its finding that the parties had equal incomes:

> Petitioner requests in her Motion to Reconsider that the Court delete language in its Findings and Conclusions to the effect that she "told the Court" she had income from bookmaking and gambling. Petitioner contends that such was not her testimony. She claims she was never a bookmaker, and had quit gambling in the Fall of 1994 because she failed to make any money.

> To clarify, the Court acknowledges that it is not entirely accurate to say that Petitioner "told the Court" she made money from bookmaking and gambling, and will therefore delete the language. The Court emphasizes, however, that it still finds that Petitioner had income from other sources than her waitressing job. While Petitioner did not "tell the Court" that she made money from bookmaking, gambling, and scalping tickets, it is evident that she engaged in some, if not all, of those activities. It is also evident that her lifestyle and property reflected an income greater than her W–2's and tax returns indicated. The Court thus inferred that Petitioner had some income from her gambling and ticket scalping activities.

> . . . .

> Second, in her Motion to Reconsider, Petitioner complains that this Court incorrectly found her income to be approximately the same as Respondent's. Rather, she contends that her gross income is far less than Respondent's, at $1,740.00 per month from her waitressing job. She therefore contends that the Court miscalculated child support based upon her inflated income. This Court, however, found that Petitioner's lifestyle and property exceeded that which could be obtained with a gross income of $1,740.00 per month. Petitioner apparently had some additional income from another source. Whether from gifts or additional employment, the Court must credit Petitioner with this income. Therefore, the Court will not disturb its finding with regard to Petitioner's income.

Both parties appealed, and the Court of Appeals agreed with Appellee that the trial court should have calculated child support on the basis of Appellee's claimed monthly income of $1,740.00:

At trial and in her deposition, Angela admitted that she gambled and placed bets for friends. She explained that she had a "system" with some friends whereby she would contact a bookmaker and place bets for them (and sometimes herself). If they won the wager, her friends would pay her 10% of their winnings; if they lost, she would receive nothing. Angela testified that she did not earn any "income" from this arrangement since her earnings, wins, and losses balanced out. Additionally, she told the court that she had ceased placing bets for her friends but that she did still occasionally gamble herself.

Under the Child Support Guidelines set forth at KRS 403.212, the amount of child support obligation is determined by the parents' gross income. "Gross income" is defined as income "from any source"—including gifts. KRS 403.212(2)(b). However, the income statements must be verified by *documentation* of current and past income. KRS 403.212(2)(f). Documentation is not limited to income tax returns, pay-stubs, or receipts.

Angela presented the court with past and current income tax returns, which supported her statements that her income on paper was $1,710.00 per month. No other documentation of her income was introduced by either party. While Angela admitted that she placed bets for friends and that she sometimes earned money under this "system," she claimed that her own gambling losses canceled out her earnings. There was simply no evidence of record to refute this admission. Her checking account statements did not reflect any extra infusion of income. Although Bruce maintains that Angela earns more than $1,000 a month on gambling ventures, he has failed to offer any proof beyond his own speculation to support his bare allegation.

Child support exists for the benefit of the child. Since it is calculated from the gross income of both parents, the court must utilize the correct figures as to the gross income of the parents in order that the child not be deprived of necessary support. In this case, the record contains no evidence that Angela earned any income from her gambling ventures; in its judgment, the court concluded that the proof as to her gambling income was "speculative and limited."

Additionally, we cannot ascertain that Angela derived extra income from "gifts." Bruce alleged that she received income from "gifts" given to her by Dr. Reid. Angela and Dr. Reid both testified that he had taken her on vacations, that he often took her to dinner, and that on occasion he would give her ten or twenty dollars. The record shows that Dr. Reid had also given Angela a piece of property in Floyd County, Indiana, as well as interest in a motor home. These facts alone do not provide a basis for imputing regular income to Angela. We find, therefore, that the court abused its discretion by imputing income to Angela.

The Court of Appeals thus vacated the trial court's judgment, in part,[1] and re-

---

1. The Court of Appeals also held that the trial court had erred by: (1) improperly calculating the marital and nonmarital interests in two parcels of real estate owned by the par-

ties; and (2) failing to divide personal property. Accordingly, the Court of Appeals vacated and remanded for the trial court to recalculate the parties' interests in the properties in

manded the case to the trial court with directions for it to calculate child support based upon the documented income of the parties.

As to the other primary issue on appeal, the record reflects that, in 1991, Appellant contributed nonmarital funds of $6,188.00 towards the parties' purchase of their marital residence. Then, in 1993, he used additional nonmarital funds of $8,577.61 in connection with a refinancing of the mortgage against the residence. $6,294.61 of that amount was applied directly to the loan balance, and $2,283.00 paid other costs associated with the closing. Both the trial court and the Court of Appeals considered Appellant's original contribution towards the purchase of the residence in determining his nonmarital interest, but neither court considered his additional contribution used to refinance the mortgage in calculating Appellant's nonmarital interest in the residence.

## III. DISCUSSION

Appellant raises six (6) separate issues on appeal. Although we have considered each of Appellant's allegations of error, we find no merit in four (4) of those allegations. Specifically, we perceive no abuse of discretion by the trial court in its rulings as to Appellant's claims on appeal concerning Appellee's alleged dissipation of marital property and the trial court's ruling awarding the marital residence to Appellee. Further, Appellant has not demonstrated that the trial court's original division of marital debt constituted an abuse of discretion, and, in any event, the unchallenged portion of the Court of Appeals opinion directs the trial court to reconsider its allocation of marital debt after it resolves other issues of property division upon remand. Finally, Appellant cites no authority to support his allegation that, if this matter is remanded to the trial court for reexamination of whether to award child support, he should be permitted to introduce additional evidence regarding Appellee's undocumented income. We address Appellant's remaining allegations of error in more depth below.

## A. APPELLEE'S GROSS INCOME

Since the Kentucky Child Support Guidelines'[2] 1990 adoption,[3] Kentucky courts have, generally, determined parents' child support obligations using these guidelines, which create a rebuttable presumption that the appropriate child support obligation is that set forth in the guidelines table.[4] To apply the guidelines, a court must first determine the gross income of each party because "[t]he child support obligation set forth in the child support guidelines table shall be divided between the parents in proportion to their combined monthly adjusted parental gross

---

question, equitably divide the parties' personal property, and, after doing so, to review its previous division of marital debt. Although Appellant raises a related issue concerning the trial court's allocation of marital debt, Appellee filed no cross-motion for discretionary review asking us to address these issues decided in Appellant's favor, and those issues are thus not before this Court.

**2.** See KRS 402.212(6).

**3.** 1990 Ky. Acts ch. 418, § 1 (eff.7–13–90).

**4.** KRS 403.211(2) ("At the time of initial establishment of a child support order, whether temporary or permanent, or in any proceeding to modify a support order, the child support guidelines in KRS 403.212 shall serve as a rebuttable presumption for the establishment or modification of the amount of child support."). The same subsection permits trial courts to deviate from the guidelines, but only where "their application would be unjust or inappropriate. [And][a]ny deviation shall be accompanied by a written finding or specific finding on the record by the court, specifying the reason for the deviation." *Id.*

income."[5] For purposes of the guidelines, gross income is broadly defined:

'Gross income' includes income from any source, except as excluded in this subsection, and includes but is not limited to income from salaries, wages, retirement and pension funds, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, Social Security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, Supplemental Security Income (SSI), gifts, prizes, and alimony or maintenance received. Specifically excluded are benefits received from means-tested public assistance programs, including but not limited to public assistance as defined under Title IV–A of the Federal Social Security Act, and food stamps.[6]

While "[i]n most cases, gross income will be the actual gross income of each parent,"[7] the guidelines make allowance:

For income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership or closely held corporation, "gross income" means gross receipts minus ordinary and necessary expenses required for self-employment or business operation. Straight-line depreciation, using Internal Revenue Service (IRS) guidelines, shall be the only allowable method of calculating depreciation expense in determining gross income. Specifically excluded from ordinary and necessary expenses for purposes of this guideline shall be investment tax credits or any other business expenses inappropriate for determining gross income for purposes of calculating child support. Income and expenses from self-employment or operation of a business shall be carefully reviewed to determine an appropriate level of gross income available to the parent to satisfy a child support obligation. In most cases, this amount will differ from a determination of business income for tax purposes. Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business or personal use of business property or payments of expenses by a business, shall be counted as Income if they are significant and reduce personal living expenses such as a company or business car, free housing, reimbursed meals, or club dues.[8]

 In support of its holding that only documented income may be considered by a trial court in determining child

---

**5.** KRS 403.212(3). Adjusted gross income is gross income less:

 1. The amount of pre-existing orders for current maintenance for prior spouses to the extent payment is actually made and the amount of current maintenance, if any, ordered paid in the proceeding before the court;

 2. The amount of pre-existing orders of current child support for prior-born children to the extent payment is actually made under those orders; and

 3. A deduction for the support to the extent payment is made, if a parent is legally responsible for and is actually providing support for other prior-born children who are not the subject of a particular proceeding. If the prior-born children reside with that parent, an "imputed child support obligation" shall be allowed in the amount which would result from application of the guidelines for the support of the prior-born children.
KRS 403.212(2)(g)(1)-(3). These deductions from gross income are not implicated in this case.

**6.** KRS 403.212(2)(b).

**7.** Louise E. Graham & James E. Keller, 16 Kentucky Practice (Domestic Relations Law) § 24.19 (2nd ed.1997).

**8.** KRS 403.212(2)(c).

support, the Court of Appeals relied upon subsection (f) of KRS 403.212(2):

> Income statements of the parents shall be verified by documentation of both current and past income. Suitable documentation shall include, but shall not be limited to, income tax returns, paystubs, employer statements, or receipts and expenses if self-employed.[9]

Although this subsection undoubtedly requires verification by documentation of a party's income statement,[10] neither this subsection nor any other provision of the guidelines explicitly requires a party to file an income statement that establishes his or her gross income.[11] However, "[n]o rule of statutory construction has been more definitely stated or more often repeated than the cardinal rule that significance and effect shall, if possible, be accorded to every part of the Act." [12] Additionally, "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[ ] ...." [13] And, it is axiomatic that, when interpreting a provision of a statute, a court should not, if possible, adopt a construction that renders a provision meaningless or ineffectual [14] or interpret a provision in a manner that brings about an absurd or unreasonable result.[15] Accordingly, the construction of KRS 403.212(2)(f) requires us to consider not only that subsection, but the whole statutory scheme establishing the guidelines.

■ With the guidelines' adoption, child support determinations shifted "away from an expense-based process and toward an income-based process." [16] Accordingly, the determination of "child support under guidelines focuses the process on income of the parties ...," [17] and therefore, "an accurate application of a guideline depends upon obtaining precise income figures" [18]

---

9. KRS 403.212(2)(f).

10. "Income statement" is not defined for purposes of the guidelines by statute or regulation. Generally speaking, however, an "income statement" is "[a] statement of all the revenues, expenses, gains, and losses that a business incurred during a given period." BLACK'S LAW DICTIONARY 768 (7th ed.1999).

11. I would additionally observe that Kentucky's administrative regulations relating to administrative determination and collection of child support similarly do not explicitly require the filing of income statements by the parties. See 921 KAR Ch. 1. Other states, however, have made the filing of such statements a statutory requirement. See LA. REV. STAT. ANN. § 9:315.2(A) (2001) ("[E]ach party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings."). Additionally, local rules of practice in certain Kentucky courts require the filing of such statements. See Rule of Fayette Circuit Court (RFCC) 27.01(C)(1) ("[E]ach party ... shall serve upon the other party a Preliminary Verified Disclosure Statement ...."); Uniform Rule of Practice of the Jefferson Family Court (JFRP) 510(C)(3)(a) & (b) ("a. Petitioner shall complete and sign the mandatory case disclosure ... before a notary within fifteen days following the filing of the petition." "b. Respondent's mandatory case disclosure shall be filed within thirty-five (35) days following service upon the Respondent ....").

12. *George v. Scent*, Ky., 346 S.W.2d 784, 789 (1961).

13. KRS 446.080(1).

14. *See Brooks v. Meyers*, Ky., 279 S.W.2d 764, 766 (1955).

15. *See Estes v. Commonwealth*, Ky., 952 S.W.2d 701, 703 (1997).

16. Robert G. Williams, *Guidelines for Setting Levels of Child Support Orders*, 21 FAM. L.Q. 281, 322 (1987).

17. *Id.* at 323.

18. *Id.*

because "[o]nce accurate income figures are identified for the parties, application of guidelines is usually straightforward." [19] We therefore interpret KRS 403.212(2)(f) as a requirement that parties file fully-documented income statements in dissolution cases that present child custody issues. We find this requirement not only implicit in the language of KRS 403.212(2)(f), but also recognize that, as a practical matter, correct income figures are necessary for trial courts to apply the guidelines accurately. By filing properly documented income statements, parties can facilitate and expedite the resolution of child support issues and thereby reduce the need for expansive and time-and-expense-consuming discovery that would otherwise be necessary to ascertain the parties' incomes and to determine the proper amount of child support.[20]

Although we interpret KRS 403.212(2)(f) as a requirement that parties file documented income statements, that statutory requirement does not mean that trial courts may consider only this documented income when determining child support. The Kentucky Child Support Guidelines are based on the Income Shares Model,[21] which, in turn, "is based on the precept that the child should receive the same proportion of parental income that would have been received if the parents lived together." [22] To fully accomplish this result, income calculations for guideline purposes necessarily must include all income of the parents, both documented and undocumented, or as stated in the guidelines, " '[i]ncome,' means actual gross income . . . ." [23]

■ In fact, the guidelines themselves recognize the possibility that all of a party's income may not be documented. For example, the guidelines define income to "potential income," [24] and such income by its nature is not capable of being documented under KRS 403.212(2)(f).[25] The same is true with most non-taxable income and unreported income, especially cash income, because, with few exceptions, it is not possible to document such income. We thus conclude that, while child support, as a general rule, shall be based on the parties' documented income, a trial court may consider income not susceptible to documentation if such income is properly established by the evidence.

■ In the present case, the trial court determined Appellee's gross income by inferring that she had additional income

**19.** *Id.*

**20.** This is the express reason that, by local rule, many trial courts mandate the filing of financial information. *See* RFCC 27.01(C)(1) (*"To facilitate and expedite the resolution of domestic relations actions* by requiring the parties to make a full and prompt disclosure of all relevant information, each party . . . shall serve upon the other a Preliminary Verified Disclosure Statement . . . ." (emphasis added)).

**21.** Graham & Keller, supra note 7 at § 24.15.

**22.** Williams, *Guidelines for Setting Levels of Child Support Orders, supra* note 16 at 392.

**23.** KRS 403.212(2)(a).

**24.** *Id.*

**25.** *Reuter v. Reuter,* 102 Md.App. 212, 649 A.2d 24, 30 (1994):

It should be obvious, however, that a parent's 'potential income' is not the type of fact which is capable of being 'verified' through documentation or otherwise; hence FL § 12–203 [FL § 12–203(b) is very similar to KRS 403.212(2)(f) and provides, "(1) Income statements of the parents shall be verified with documentation of both current and past actual income."] does not apply. . . . [T]he court may consider any admissible evidence in determining potential income.

*Id.*

from gifts, her gambling, and ticket scalping from the court's conclusion that "her lifestyle and property reflected an income greater than her W-2's and tax returns indicated." Certainly, these types of undocumented income, while not susceptible to documentation, are nevertheless income which, if proven, a trial court should consider when determining a party's gross income. As the Court of Appeals observed, however, the problem here is that the Appellant failed to prove sufficiently that Appellee actually received the undocumented income that the trial court imputed to her. Although KRS 403.212(2)(f) imposes a mandatory obligation on the parties to report and verify their income and earnings with documentation, if a party fails to comply with this obligation, the burden remains on the opposing party to prove such income and earnings. The trial court candidly stated that proof of this additional income was "limited and speculative." We agree with the trial court's characterization, but would add the word "insufficient."

 In support of the trial court's finding that Appellee's income approximately equaled Appellant's, Appellant posits that the trial court employed a "net worth analysis" akin to that utilized by the Internal Revenue Service to determine whether a taxpayer has reported all taxable income. For income tax purposes:

> "The net worth method calculates income by determining a taxpayers's net worth at the beginning and end of a period. The difference is the increase in net worth. An increase in net worth, plus nondeductible expenditures (such as personal living expenses), less nontaxable receipts, may be considered taxable

income. If the resulting figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the IRS claims the excess represents unreported taxable income." [26]

Although a method similar to that described above may be appropriate to determine a party's income for the purpose of applying the guidelines, the record in this case does not contain any evidence, much less findings or calculations by the trial court, supporting the additional monthly income assigned to Appellee. Neither a "windshield appraisal" that Appellee's "lifestyle and property reflected an income greater than her W-2's and tax returns indicated" nor Appellant's bare allegations of additional income are sufficient to support the trial court's finding of additional income. Establishing a party's income through the net worth method requires additional, reasonably certain income figures—e.g., the party's opening net worth.[27] "[L]imited and speculative" evidence will not suffice.

For the reasons stated, we agree with the Court of Appeals that the trial court erroneously imputed additional monthly income to the Appellee, that the judgment must therefore be vacated in part and remanded for the trial court to reexamine the child support issue based upon the parties' documented income as set forth in the record.

## B. APPELLANT'S NONMARITAL INTEREST IN MARITAL RESIDENCE

 We agree with Appellant that, in calculating Appellant's nonmarital inter-

---

**26.** *Yoon v. Commissioner of Internal Revenue,* 135 F.3d 1007, 1009–1010 (5th Cir.1998).

**27.** *See Holland v. United States,* 348 U.S. 121, 132, 75 S.Ct. 127, 134, 99 L.Ed. 150, 162–3 (1954) ("We agree with petitioners that an essential condition in cases of this type is the establishment, with reasonable certainty, of an opening net worth, to serve as a starting point from which to calculate future increases in the taxpayer's assets.").

est in the parties' marital residence, the trial court erroneously failed to consider Appellant's nonmarital contribution to the refinancing of that property. It is elementary that, when a party to a marriage acquires property or an interest therein with nonmarital funds, the property or interest is properly classified as nonmarital property.[28] And, " 'property' includes equity in property." [29] Although a portion of the funds Appellant contributed at refinancing ($2,283.00 of the $8,577.61) paid for closing costs and thus were not used to acquire additional interest in the property, $6,294.61 of Appellant's nonmarital funds were applied directly to the outstanding loan principal, and thus increased the parties' equity in the property. Accordingly, we hold that the trial court erred when calculating Appellant's nonmarital interest in the marital residence because it failed to consider Appellant's $6,294.61 nonmarital contribution in connection with the parties' refinancing of the property in 1993. We thus reverse the Court of Appeals on this issue, and remand the case for the trial court to recalculate the marital and nonmarital interests in the marital residence.

## IV. CONCLUSION

For the above reasons, we affirm the opinion of the Court of Appeals as to the trial court's calculation of child support, but reverse as to the trial court's calculation of Appellant's nonmarital interest in the marital residence, and remand the case to the trial court for further proceedings consistent with this opinion.

LAMBERT, C.J., concurs as to Part III–B. GRAVES, STUMBO and WINTERSHEIMER, JJ., concur.

COOPER, J., concurs in part and dissents in part by separate opinion in which JOHNSTONE, J., joins and in which LAMBERT, C.J., joins only as to Part I.

COOPER, Justice, concurring in part and dissenting in part.

I concur in the majority's conclusion that only two of the six issues now before us merit discussion. However, I disagree with the majority's resolution of both issues.

## I. CHILD SUPPORT.

The majority opinion homes in on the trial judge's use of the phrase "limited and speculative" in affirming the Court of Appeals' reversal of the child support award. However, the trial judge used that phrase only to describe the "amount" of Appellee's undocumented and unreported gross income. With respect to the "existence" of such income, the trial judge found that "Angela clearly has cash flow in excess of IRS reported income," and found her total monthly income "to be, *at a minimum*, the equivalent of respondent's [monthly income]." (Emphasis added.) Although the trial judge characterized the finding of additional income as "imputed" income, it should more properly be characterized as "hidden" income. The trial judge examined Appellee's lifestyle and monthly expenditures and concluded that she must have a gross income substantially in excess of that to which she admits. Whether her hidden income results from gambling, bookmaking, gifts, unreported tips, or other sources, it is "gross income" under KRS 403.212(2)(b) and must be considered for purposes of calculating child support under KRS 403.212(3) and (6).

**28.** KRS 403.190(2)(a) & (b).

**29.** *Newman v. Newman*, Ky., 597 S.W.2d 137, 138 (1980). *See also Travis v. Travis*, Ky., 59 S.W.3d 904, 919 n. 6 (2001).

I agree with the majority that the Court of Appeals erred in requiring Appellant to document Appellee's "hidden" income before it could be considered for child support purposes. The documentation requirement in KRS 403.212(2)(f) obviously applies to a party's own income, not to the adverse party's income—especially if the adverse party is concealing income. However, I do not agree with the majority's conclusion that the evidence of the existence of that income was insufficient to support the trial judge's findings of fact. I believe the trial judge can consider circumstantial evidence, such as lifestyle and apparent ability to pay extravagant expenditures, in determining approximate actual income. At one point during the trial, Appellee remarked that she should be awarded the marital residence because she could afford the $930.00 monthly mortgage payment, despite her claimed gross income of only $17,000.00 per year, whereas Appellant could not afford it, despite his gross income of $37,000.00 per year. In a divorce case, the trial judge is the factfinder with the authority to weigh the evidence and observe and consider the demeanor of the parties. I am unable to conclude that the trial judge's finding that Appellee has, "at a minimum," an income equal to that of Appellant was either clearly erroneous or an abuse of discretion. CR 52.01; *Heltsley v. Heltsley*, Ky., 242 S.W.2d 973, 974 (1951); *cf. Perrine v. Christine*, Ky., 833 S.W.2d 825, 827 (1992).

## II. NONMARITAL INTEREST IN MARITAL RESIDENCE.

The parties purchased the property at 4004 Stony Brook Drive in November 1991. The purchase was accomplished by payment of $90,307.00 borrowed from Bankers Mortgage Corp. and $6,188.00 in cash traceable to Appellant's nonmarital Individual Retirement Account (IRA). The majority opinion apparently concludes

*sub silentio* that the $6,188.00 payment was applied to closing costs and did not serve to increase the equity value of the property. The closing statement reflects that the closing costs were $6,902.83. However, it is clear from both Appellant's discovery deposition testimony and his testimony at trial that a down payment was made prior to the closing, and his testimony that $6,188.00 of this payment was made from funds withdrawn from his nonmarital IRA is unrefuted. (Even if the $6,188.00 had been applied only to closing costs, the result should be the same. The property could not have been purchased without that money. Under the "investment" or "source of funds" formula for calculating the parties' respective marital and nonmarital interests, all sums necessarily expended for the purchase or improvement of the property in question are factored into the equation. *Travis v. Travis*, Ky., 59 S.W.3d 904, 918–19 (2001) (Cooper, J., dissenting).)

Bankers subsequently sold the mortgage to Fleet Mortgage Co. and the parties thereafter made monthly mortgage payments to Fleet, reducing the mortgage principal to $87,996.61 as of November 1993. In November 1993, the parties refinanced the loan with a new mortgage from Inland Mortgage Corp. at a reduced rate of interest. To obtain the new mortgage, the parties were required to pay Inland the sum of $8,577.61, of which $6,294.61 was applied to the loan balance, immediately reducing that balance from $87,996.61 to $81,702.00. The remaining $2,283.00 was applied to closing costs. All of this money was also traced to Appellant's nonmarital IRA. Thus, if the "investment" or "source of funds" formula is used, Appellant's nonmarital contribution (nmc) to the Stony Brook Drive residence was $14,765.61.

```
$ 6,188.00 — down payment, November 1991
+ 8,577.61 — costs and reduction of principal, November 1993
$ 14,765.61 — nmc
```

Even if the *Brandenburg* formula is applied,[1] Appellant's nonmarital contribution was $12,482.61.

```
$ 6,188.00 — down payment, November 1991
+ 6,294.61 — applied to principal, November 1993
$ 12,482.61 — nmc
```

By June 3, 1996, the date of divorce, the parties had made sufficient additional monthly payments to Inland to reduce the mortgage balance to $73,128.00. Thus, per *Brandenburg*, the marital contribution (mc) was $10,885.00.[2]

```
$ 90,307.00 — original mortgage balance, November 1991
- 87,996.00 — mortgage balance, November 1993
$ 2,311.00 — mc, equity created, November 1991–November 1993
```

```
$ 81,702.00 — refinanced mortgage balance, November 1993
- 73,128.00 — mortgage balance, June 3, 1996
$ 8,574.00 — mc, equity created after November 1993
```

```
$ 2,311,00 — mc, November 1991–November 1993
- 8,574.00 — mc, November 1993–June 3, 1996
$ 10,885.00 — total mc
```

Per *Brandenburg*, the total contribution (tc) is the sum of the marital (mc) and nonmarital (nmc) contributions.

```
$ 10,885.00 — mc
+ 12,482.61 — nmc
$ 23,367.61 — tc
```

The appraised value of the property on June 3, 1996, was $103,000.00. Thus, as found by the trial judge, the equity value (e) of the property was $29,872.00.

```
$ 103,000.00 — appraised value
- 73,128.00 — mortgage balance
$ 29,872.00 — equity (e)
```

---

1. *Brandenburg v. Brandenburg,* Ky.App., 617 S.W.2d 871 (1981).

2. The "investment" or "source of funds" approach cannot be used in this case because the trial record does not contain sufficient information to determine the amount of actual mortgage payments made by the parties prior to June 3, 1996, the date of divorce and effective date of the property division. Appellee argued at trial that she should be credited with all of the mortgage reduction because all of the monthly payments were made with income from her nonmarital rental properties. However, income from nonmarital property that is produced during the marriage is marital in nature. *Dotson v. Dotson,* Ky., 864 S.W.2d 900, 902 (1993); *Marcum v. Marcum,* Ky., 779 S.W.2d 209, 210–11 (1989); *Sousley v. Sousley,* Ky., 614 S.W.2d 942, 944 (1981).

Applying the *Brandenburg* formula, Appellant's nonmarital interest (nmi) in the equity value of the property as of June 3, 1996, was $15,951.65 and the marital interest (mi) was $13,920.35.

$$\frac{\$12,482.61(\text{nmc})}{\$23,367.61(\text{tc})} = 53.4\% \times \$29,872.00(\text{e}) = \$15,951.65(\text{nmi}).$$

$$\frac{\$10,885.00(\text{mc})}{\$23,367.61(\text{tc})} = 46.6\% \times \$29,872.00(\text{e}) = \$13,920.35(\text{mi}).$$

\* \* \* \* \* \*

Accordingly, I would reverse the Court of Appeals on both issues. I would reinstate the judgment of the trial court with respect to child support but would remand the property division to the trial court with directions to award Appellant his $15,951.65 nonmarital interest in the Stony Brook Drive property and amend the division of marital property accordingly. (The Court of Appeals previously ordered a remand for recalculation of Appellee's nonmarital interest in the property located at 1350 Vim Drive and that issue has not been raised on discretionary review. The majority opinion of this Court orders a remand for recalculation of Appellant's nonmarital interest in the Stony Brook Drive property but erroneously fails to direct the trial court to credit him with the nonmarital contribution he made to that property at the time of its purchase in November 1991.)

JOHNSTONE, J., joins this opinion, concurring in part and dissenting in part.

LAMBERT, C.J., joins this opinion only as to Part I.