# Supreme Court of Kentucky

2007-SC-000294-DG



LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT

DATE 4/9/09 Kelly Klaber P.C.
APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.      CASE NO. 2006-CA-000124-MR AND 2006-CA-000191-MR
FAYETTE CIRCUIT COURT NO. 00-CI-03636

NORMAN JOHNSON, ET AL.                                          APPELLEES

## OPINION OF THE COURT BY JUSTICE SCHRODER

## REVERSING IN PART, VACATING AND DISMISSING IN PART

This Court accepted discretionary review of the Court of Appeals'

consolidated decision in the appeal and cross-appeal of a trial court's

interpretation of two Lexington-Fayette Urban County Government ordinances

dealing with retired employees' eligibility for health insurance coverage.

Because some retirees have irrevocably opted out of future health insurance

coverage, the 1999 ordinance contains a latent ambiguity as to those retirees

eligible for coverage. We resolve the latent ambiguity in favor of coverage to

those retirees who had not opted out of the plan prior to July 1, 1999, and not

to retirees who had participated in the plan any date prior to July 1, 1999.

Hence, we reverse the Court of Appeals on that issue. The issue of the

constitutionality of amending the ordinance becomes moot, which requires us

to vacate the decision on the constitutionality of the 2000 ordinance, and dismiss this issue.

Norman W. Johnson, Charles V. Robinson, and John L. Gumm, the Appellees, were all retired firefighters for the Appellant, Lexington-Fayette Urban County Government (LFUCG). The LFUCG provided health insurance to its employees through a group plan. Upon retirement, the retiree was given the option of continuing to participate in the plan, but at a cost of paying 100% of the premium. If the retiree opted out of the plan at any time, the opt-out was irrevocable and the retired employee could not rejoin the plan. All three retirees in this case had at some time opted out.

The controversy arose in 1999, when the LFUCG passed an ordinance[1] making certain retired employees eligible for health-insurance coverage at a shared cost with the LFUCG. The ordinance provided in pertinent part:[2]

> Section 2 – That Section 23-36.5 of the Code of Ordinances be and hereby is created to read as follows:
>
> (a) All members of the Policemen's and Firefighters' Retirement Fund of the Lexington-Fayette Urban County Government, operated pursuant to KRS 67A.360, et seq., who retired prior to July 1, 1999, shall be eligible to participate in a group health insurance plan (providing hospital and medical or health maintenance organization health care coverage) approved by the urban county council for such retirees (the "plan").
>
> (b) The urban county government shall provide, on behalf of all members of the Policemen's and

---

[1] Ordinance No. 217-99.

[2] Id. (emphasis added).

Firefighters' Retirement Fund who retired prior to July 1, 1999 and <u>who were participants in the group health insurance plan coverage</u> provided to urban county government employees <u>and retirees prior to July 1, 1999, the following benefits</u>: (1) for the period from July 1, 1999 through June 30, 2000, a sum equal to fifty percent (50%) of the urban county government's contribution to the health insurance component of the benefit pool for current urban county government employees (the "contribution"); and (2) for the period from July 1, 2000 through June 30, 2001 and thereafter, a sum equal to the single premium for the plan coverage selected by the retiree, but not more than one hundred (100%) of the contribution.

(c) <u>No benefits shall be available under this section to retired members of the Policemen's and Firefighters' Retirement Fund who were not, prior to July 1, 1999, participants in the group health insurance plan</u> coverage provided to urban county government employees and retirees.

(d) All payments shall be made to the approved provider of the group health insurance plan, not to the retiree, and the retiree shall not be entitled to receive any portion of the government contribution remaining after payment is made to the approved provider.

Our three retirees saw nothing in the language of the ordinance that would preclude them from re-enrolling and benefiting from the LFUCG's contributions. The LFUCG refused to enroll them, insisting that the ordinance was addressing only those who had not previously opted out, those that were still covered prior to July 1, 1999. After the retirees brought this action, LFUCG adopted Ordinance 366-2000, making its intention clear and amending Ordinance No. 217-99 to provide that members "who retired prior to July 1, 1999, <u>and who did not terminate their participation in the group health insurance plan provided by the urban county government before that date,</u>

shall <u>continue to</u> be eligible to participate . . . ." Contributions would be made for members "who retired prior to July 1, 1999 and who were participants in the group health insurance plan coverage provided to urban county government employees and retirees <u>immediately</u> prior to July 1, 1999 . . . ." The retirees amended their complaint to challenge the 2000 ordinance as violating state and federal constitutional guarantees of equal protection. The trial court saw no patent ambiguity in the 1999 ordinance and held the retirees were eligible from the time of passage of the 1999 ordinance until the adoption of the countervailing ordinance in 2000.

The trial court rejected the retirees' argument that the 2000 ordinance vested contractual rights. The court ruled that the 1999 ordinance offered coverage as a gratuity, for which benefit the retirees provided no consideration, and there was "no right (contractual, 'vested,' or otherwise) to future benefits." Therefore, the court ruled the LFUCG was free to modify or terminate the scheme at any time.

As to the retirees' argument that the 2000 ordinance was arbitrary, in violation of the equal protection guarantees of the Kentucky Constitution,[3] the trial court took evidence to determine whether the LFUCG had a rational basis for excluding the retirees in the 2000 ordinance. The court concluded that the ordinance was constitutional . The court cited LFUCG's rationale that health costs for retirees (generally older than the average member) are higher; that costs are driven up by "adverse selection" (where a person obtains coverage

---

[3] Sections two and three of the current Kentucky Constitution.

4

when in poor health, and suspends coverage when in good health); and that the opt-out provision was a common practice among employers and employees. It further remarked that participation in a group-insurance plan is not a fundamental right, and that these retirees were fully aware when they originally withdrew from the plan that they could not re-enroll. "It is rational for the government to rely on choices made, in some cases years before, in future planning."

The Court of Appeals affirmed the trial court's holding that the 1999 ordinance covered the retirees, and reversed in part, concluding the 2000 ordinance was unconstitutional because there was no rational basis for excluding the retirees after having admitted them in 1999. We granted discretionary review to determine whether there was any patent or latent ambiguity in the 1999 ordinance and, if not, whether the 2000 ordinance was unconstitutional.

Section 2 of the 1999 ordinance[4] has three subsections. The pertinent parts are:

> (a) All . . . who retired prior to July 1, 1999, shall be eligible to participate in a group health insurance plan
> . . . .
>
> (b) The urban county government shall provide . . . all members of the . . . Retirement Fund who retired prior to July 1, 1999 and who <u>were</u> participants in the group health insurance plan provided to . . . retirees prior to July 1, 1999, . . . .

---

[4] No. 217-99 (emphasis added).

(c) No benefits shall be available . . . to retired members . . . who were not, prior to July 1, 1999, participants in the group health insurance plan . . . .

A plain literal reading of the statute reveals: all Firemen retirees who retire prior to July 1, 1999, are eligible to receive group health insurance; the LFUCG shall pay for benefits for Firemen who retired before July 1, 1999; and benefits are payable to only these retirees who retired prior to July 1, 1999, and were participants in the group health plan. No patent ambiguity appears and in the absence of ambiguity, the statutes (ordinances) speak for themselves. KRS 446.130; Heringer v. Rolf, 287 S.W.2d 149, 150 (Ky. 1956).

The latent ambiguity arises when we try to grant benefits to retirees who were participants in the group health plan. Does it mean retirees who were participants at the time the ordinance took effect (realizing those who opted-out were no longer participants) or retirees who were participants at any time? Subsection (a) gives retirees a benefit. Subsection (b) requires the LFUCG pay for benefits. Subsection (c) attempts to limit or exclude participants. Under our retirees' interpretation, none of those granted benefits under subsection (a) could be excluded under subsection (c). Such an interpretation would obviate the exclusion of subsection (c). We have to assume that an exclusion was meant to exclude someone, otherwise subsection (c) would be meaningless. Under the rules of statutory construction, no part should be construed as "meaningless or ineffectual." Brooks v. Meyers, 279 S.W.2d 764, 766 (Ky. 1955). Each statute (ordinance) should be construed as a whole, and not by a single sentence. Democratic Party of Kentucky v. Graham, 976 S.W.2d 423,

6

429 (Ky. 1998); see also Cosby v. Commonwealth, 147 S.W.3d 56, 58-59 (Ky. 2004).

Once the court determines there is an ambiguity, the court can look to the legislative intent. "Where an ambiguous statutory meaning is clarified by subsequent legislation, that subsequent legislation is strong evidence of the legislative intent of the first statute." Parks v. Commonwealth, 192 S.W.3d 318, 325 (Ky. 2006) (citations omitted). The LFUCG subsequently passed the 2000 ordinance[5] to clearly state its intention in adopting the 1999 ordinance.[6] The 2000 ordinance clearly amends the 1999 ordinance to provide that retirees "who retired prior to July 1, 1999, and who did not terminate their participation in the group health insurance plan provided by the urban county government before that date, shall continue to be eligible to participate . . . ."[7] Subsection (c) was amended to exclude retirees "who were not, immediately prior to July 1, 1999, participants in the group health insurance plan . . . ."[8]

The amendments show clearly which past participants were to be covered, only those who had not opted out of the plan prior to the time the 1999 ordinance became effective, July 1, 1999. This interpretation explains why subsection (c) was originally included in the original 1999 ordinance. The exclusions in subsection (c) are real under this interpretation, and include our retirees herein.

---

[5] No. 366-2000.

[6] No. 217-99.

[7] No. 366-2000, Section 2(a) (emphasis added).

[8] Id. at Section 2(c) (emphasis added).

Our resolution of the latent ambiguity requires us to reverse the Court of Appeals on that issue, which was the substance of the direct appeal to that court. The protective cross-appeal in the Court of Appeals concerned the constitutionality of the 2000 ordinance, which becomes moot with our interpretation of the latent ambiguity in the 1999 ordinance. Therefore, the Court of Appeals' decision on the cross-appeal is vacated, and the cross-appeal is dismissed.

Minton, C.J.; Scott, and Venters, JJ., concur. Abramson, J., dissents by separate opinion in which Cunningham, J., joins. Noble, J., not sitting.

COUNSEL FOR APPELLANT:

Leslye Mercer Bowman
Director of Litigation,
Lexington-Fayette Urban County Government
Department of Law
200 East Main Street, 11th Floor
Lexington, KY 40507

Logan Barker Askew
Lexington-Fayette Urban County Government
Department of Law
200 East Main Street, 11th Floor
Lexington, KY 40507

Sheryl G. Snyder
Frost, Brown & Todd, LLC
400 W. Market Street, 32nd Floor
Louisville, KY 40202


COUNSEL FOR APPELLEES:

Everett Clay Hoffman
Priddy, Cutler, Miller & Meade, PLLC
800 Republic Building
429 W. Muhammad Ali Blvd.
Louisville, KY 40202

John Frith Stewart
Stewart, Roelandt, Stoess, Craigmyle & Emery, PLLC
6506 W. Hwy. 22
P.O. Box 307
Crestwood, KY 40014

# Supreme Court of Kentucky

2007-SC-000294-DG

LEXINGTON-FAYETTE URBAN                                                  APPELLANT
COUNTY GOVERNMENT

ON REVIEW FROM COURT OF APPEALS
V.          CASE NO. 2006-CA-000124-MR AND 2006-CA-000191-MR
FAYETTE CIRCUIT COURT NO. 00-CI-03636

NORMAN JOHNSON, ET AL.                                                   APPELLEES

**OPINION BY JUSTICE ABRAMSON**

**DISSENTING AS TO THE APPEAL AND
REINSTATING AND REVERSING AS TO THE CROSS-APPEAL**

I respectfully dissent as to the appeal and would reinstate the cross-appeal, reverse the Court of Appeals on the subject matter of the cross-appeal and reinstate the judgment of the trial court.

## I. The 1999 Ordinance Provides the Benefits Sought by Appellees.

When construing a statute or ordinance that is unambiguous on its face, our "duty to accord to [the] words . . . their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." Bailey v. Reeves, 662 S.W.2d 832, 834 (Ky. 1984), citing Department of Revenue v. Greyhound Corp., 321 S.W.2d 60 (Ky. 1959). Applying that fundamental principle to the facts of this case, the 1999 Ordinance provides the Appellees with the health insurance benefit they seek. That Ordinance states in relevant part:

(a)   All members of the Policemen's and Firefighters' Retirement Fund of the Lexington-Fayette Urban County Government, operated pursuant to KRS 67A.360, et seq., who retired prior to July 1, 1999, shall be eligible to participate in a group health insurance plan (providing hospital and medical or health maintenance organization health care coverage) approved by the urban county council for such retirees (the "Plan").

(b)   The urban county government shall provide, on behalf of all members of the Policemen's and Firefighters' Retirement Fund who retired prior to July 1, 1999 and who were participants in the group health insurance plan coverage provided to urban county government employees and retirees prior to July 1, 1999, the following benefits:  (1) for the period from July 1, 1999 through June 30, 2000, a sum equal to fifty percent (50%) of the urban county government's contribution to the health insurance component of the benefit pool for current urban county government employees (the "contribution"); and (2) for the period from July 1, 2000 through June 30, 2001 and thereafter, a sum equal to the single premium for the plan coverage selected by the retiree, but not more than one hundred percent (100%) of the contribution.

(c)   No benefits shall be available under this section to retired members of the Policemen's and Firefighters' Retirement Fund who were not, prior to July 1, 1999, participants in the group health insurance plan coverage provided to urban county government employees and retirees.

Thus, subsection (a) provides that all members of the Fund "who retired prior to July 1, 1999 shall be eligible to participate in a group health insurance plan" and subsection (b) provides that the Lexington-Fayette Urban County Government (LFUCG) shall provide a contribution benefit to members of the Fund "who retired prior to July 1, 1999 and who were participants in the group health insurance plan coverage." Subsection (b) plainly and literally provides

2

the designated contribution benefit to any member of the Fund who participated in the group health insurance plan and retired prior to July 1, 1999. The Appellees fit that description and thus are entitled, as the trial court and Court of Appeals properly concluded, to the contribution benefit provided in the 1999 Ordinance.

The majority departs from construction of the plain language of the ordinance to consider whether there is a latent ambiguity given the controversy currently before this Court and the language of subsection (c). Subsection (c), contrary to the majority's suggestion, is not rendered "meaningless or ineffectual" if construed as Appellees contend it should be. That subsection simply provides that any retired member of the Fund who did not participate in the group health insurance coverage "prior to July 1, 1999" cannot participate in the coverage discussed in subsection (a) and cannot receive the contribution benefit being provided by LFUCG through subsection (b) of the 1999 Ordinance. Subsection (c) has clear meaning: any retired Fund member who did not participate in the group health insurance prior to July 1, 1999, most likely because he or she had obtained health insurance coverage elsewhere such as through a spouse, could not participate under the 1999 Ordinance. Stated differently, if a retired Fund member had never taken the group health insurance coverage he or she could not opt in now for the first time. While subsection (c) as the Court of Appeals stated, "does not impose any greater or lesser restrictions on eligibility for benefits than either Section 2(a) or 2(b)" it does serve to underscore who is *not* entitled to benefits.

With all of the three relevant subsections having clear and unambiguous meaning, it is wholly inappropriate to resort to construction of the ordinance by reference to the subsequent 2000 Ordinance when the LFUCG Council added new language that expressly limited the class of potential beneficiaries. As noted in City of Vanceburg v. Plummer, 275 Ky. 713, 122 S.W.2d 772, 776 (Ky. 1938), where a statute or ordinance is unclear or ambiguous "resort may be had to the journals or to the legislative records showing the legislative history of the act in question in order to ascertain the intention of the Legislature, but this rule does *not* apply where the language of the statute is plain and unambiguous." (emphasis supplied.) In short, the 1999 Ordinance is plain and unambiguous on its face and the trial court and Court of Appeals properly construed it as allowing the LFUCG-funded contribution benefit to the Appellees.

## II. The 2000 Ordinance Precludes the Benefits Sought by Appellees and Withstands Their Equal Protection Challenge.

Because the majority, in my view, abandoned settled statutory construction precepts to find an ambiguity and then "rolled up" the analysis of the 1999 Ordinance with the 2000 Ordinance, they never reached the cross-appeal which is really a separate and distinct question, *i.e.,* what rights, if any, do the Appellees have under the 2000 Ordinance? Once again, we begin with the plain language of the ordinance which provides in relevant part:

> (a) All members of the Policemen's and Firefighters' Retirement Fund of the Lexington-Fayette Urban County Government, operated pursuant to KRS 67A.360, et. seq., who retired prior to July 1, 1999, and who did not terminate

4

their participation in the group health insurance plan provided by the urban county government before that date, shall continue to be eligible to participate in a group health insurance plan (providing hospital and medical or health maintenance organization health care coverage) approved by the urban county council for such retirees (the "plan").

(b) The urban county government shall provide, on behalf of all members of the Policemen's and Firefighters' Retirement Fund who retired prior to July 1, 1999 and who were participants in the group health insurance plan coverage provided to urban county government employees and retirees immediately prior to July 1, 1999, the following benefits: (1) for the period from July 1, 1999 through June 30, 2000, a sum equal to fifty percent (50%) of the urban county government's contribution to the health insurance component of the benefit pool for current urban county government employees (the "contribution"); and (2) for the period from July 1, 2000 through June 30, 2001 and thereafter, a sum equal to the single premium for the plan coverage selected by the retiree, but not more than one hundred (100%) of the contribution.

(c) No benefits shall be available under this section to retired members of the Policemen's and Firefighters' Retirement Fund who were not, immediately prior to July 1, 1999, participants in the group health insurance plan coverage provided to urban county government employees and retirees.

(emphasis supplied). The preamble to this 2000 Ordinance states that, for the following three reasons, benefits are limited to only those retirees who had continued to participate in the group health care plan:

(1) to avoid creating an incentive and opportunity for persons to terminate their health care coverage during times of good health, and reinstate their

5

health care coverage during times of high risk or poor health, to the detriment of other participants;

(2) to maintain the underwriting risk undertaken by the health care insurance plan at a more constant and predictable level by limiting the availability of coverage to those persons who have maintained it consistently since their retirement; and,

(3) to maintain the ability to provide an appropriate level of benefits for those persons who have maintained their participation at their own expense.

By this action of the LFUCG Council, the Appellees were clearly removed from the class of retirees eligible to participate in the health insurance plan coverage and to receive the LFUCG-funded contribution benefit accorded in subsection (b). The 2000 Ordinance applies only to retirees who had not terminated their participation in the group health insurance plan prior to July 1, 1999 or, as stated in subsection (b), who were participants *"immediately prior to July 1, 1999."* (emphasis supplied.) It is undisputed that Appellees do not fit within this classification.

Although the Appellees are not entitled to coverage under the language of the 2000 Ordinance, they contend that the restrictive language of the newer ordinance violates their equal protection rights under the Kentucky and United States Constitutions. Citing Elk Horn Coal Corp. v. Cheyenne Res., Inc., 163 S.W.3d 408, 419 (Ky.2005), Appellees note that instead of applying the federal constitutional "rational basis" standard for legislative classifications, this Court has "construed our Constitution as requiring a 'reasonable basis' or a 'substantial and justifiable reason' for discriminatory legislation in areas of

6

social and economic policy." Indeed, this is the controlling standard under Kentucky law and, although one might question the fairness of according the generous benefit at issue here to some but not all of the firefighters and police officers who served the Lexington community prior to July 1, 1999, the record is sufficient to establish a "reasonable basis" or "substantial and justifiable reason" for the classification.

The trial court, citing F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993), upheld the 2000 Ordinance stating "[a]s long as the legislative body has a legitimate interest—a rational basis—it may act in ways that treat members of the same class differently without violating equal protection mandates." Although employing the federal standard, the trial court emphasized the Beach Communications holding that courts are not to judge the "wisdom, fairness and logic of the legislative choices" but rather to determine whether there is a rational basis for the challenged classification. The record reflects that the trial court reviewed the evidence regarding LFUCG Council's rationale for classifying retirees based on whether they participated in the group health insurance plan immediately prior to July 1, 1999 and concluded that it was "rational," for "cost and program efficiency purposes," to limit the new LFUCG-funded benefit to those retirees who had remained with the group health insurance plan. Three specific reasons cited by LFUCG, and found by the trial court, were "(1) there is a logical connection between age and expected health care costs; (2) the potential for adverse selection which drives

7

up overall costs;[1] and (3) the opt-out provision is commonly used among employers who offer retiree medical coverage."[2]

Although it is true, as the Court of Appeals noted, that these same reasons existed prior to the enactment of the 1999 Ordinance and did not result in the same distinction being drawn between continuous plan participants and those who had opted out of the plan, that fact does not render the 2000 Ordinance unconstitutional. As the United States Supreme Court observed in United States Railroad Retirement Board v. Fritz, 449 U.S. 166 (1980), a legislative body is free to rethink its prior classifications, and as long as there is a reasonable basis for its current line drawing, "the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." Id. at 179.

There is substantial evidence of record that these three factors impacting costs were relied upon by members of the LFUCG Council in limiting the benefit to those retirees who had not terminated their group health insurance coverage. While Appellees through cross-examination were able to raise valid points of contention with these stated factors, none of the three was undermined. As this Court noted in Elk Horn Coal

---

[1] This "adverse selection" refers to the entry into the plan of new health plan participants with no prior coverage who typically have higher health care costs. This is identical to the first reason for the classification cited by the Council in the preamble quoted supra.

[2] The opt-out provision refers to the practice of not allowing retirees who have opted-out of coverage to return at a later date. This finding corresponds to paragraph (2) of the preamble quoted infra.

In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

163 S.W. 3d at 413 citing, F.C.C. v. Beach Communications, Inc., supra.

LFUCG has provided "a reasonably conceivable state of facts" that supplies a rational basis. As counsel for LFUCG succinctly argued to this Court, the underwriting costs are dramatically affected if retired Fund members who have departed the group health insurance plan are readmitted and, moreover, the enhanced benefit intended for the smaller, finite group of retirees who stayed with the health insurance plan, if extended to that larger group, would be too great a financial burden for LFUCG to bear.

In sum, although Appellees challenge the reasons for the classification and insist that the reasons offered are unsupported to varying degrees by the evidence of record, there is in fact a rational basis under federal law and a reasonable basis under state law for what the LFUCG Council did in the 2000 Ordinance. Simply put, where retirees have stayed with and continued to support a group health insurance plan by paying the premiums themselves (and, yes, admittedly benefiting from the resulting coverage), if a legislative determination is made to assist retirees by defraying some of the costs of escalating premiums, it is not unreasonable to limit that assistance to retirees who have continued to rely on and support the government's group health insurance plan after retirement as opposed to those who have opted to obtain

coverage elsewhere. While the fairness of this distinction may seem questionable, especially when comparing two individuals who offered similar service to the Lexington community and one of them cannot receive the benefits which the 2000 Ordinance confers on his former colleague, this comparison is not the appropriate equal protection inquiry. Because there is a legally appropriate basis, whether deemed "rational" or "reasonable", for the LFUCG distinguishing between those retirees who had voluntarily separated from the group health insurance plan and those who had continued to pay premiums and participate, there is no equal protection violation under either the Kentucky or the United States Constitutions.

For the foregoing reasons, I would affirm the Court of Appeals and the trial court as to the 1999 Ordinance and then reinstate the cross-appeal, reverse the Court of Appeals as to the 2000 Ordinance, and reinstate the judgment of the trial court.

Cunningham, J., joins.